**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **PROGRESSIVE NORTHWESTERN INSURANCE COMPANY,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 15-9267-JAR-KGG** |
| **GABRIEL GANT, INDIVIDUALLY AND AS HEIR AT LAW OF KATHRYN GANT, AND GABRIEL GANT, AS ADMINISTRATOR OF THE ESTATE OF KATHRYN GRANT, DECEASED, AND GABRIEL GANT, AS NEXT FRIEND OF M.G., F.G., AND C.G.,** | |
| **Defendants.** | |

<u>**AMENDED MEMORANDUM AND ORDER**</u>

Plaintiff Progressive Northwestern Insurance Company ("Progressive") filed this declaratory judgment action seeking a declaration of its rights and obligations under an insurance policy issued to Edward and Linda Birk. This matter is before the Court on Progressive's Motion to Strike and to Dismiss Defendant Gabriel Gant's Counterclaim and to Strike Answer as Untimely (Doc. 30). Defendant has responded and moves for leave to file an answer out of time (Doc. 45). For the reasons explained in detail below, the Court grants Defendant Gant leave to file an answer out of time, denies Progressive's Motion to Strike Answer and Counterclaim, and grants Progressive's Motion to Dismiss Counterclaim, with leave to amend.

**I.       Background**

The following facts are drawn from Defendant Gant's Counterclaim; the well-pleaded facts alleged therein are assumed to be true, as required on a motion to dismiss under Fed. R.

Civ. P. 12(b)(6).[1]  This case arises out of a fatality vehicle collision that occurred in June 2011.

Justin Birk and Katie Gant were involved in a head-on collision on a rural Coffey County road;

Mrs. Gant died of her injuries at the scene of the accident.  Defendant Gabriel Gant ("Gant")

filed a wrongful death lawsuit on behalf of his wife against Justin Birk; his parents, Edward and

Linda Birk; and the family company, Birk Oil Company (collectively, "the Birk Defendants").

Shortly before trial in the underlying case, Gant signed an agreement with the Birk Defendants,

wherein they assigned all of their rights against Progressive to Gant.

The Birk Defendants were insured by Progressive, which hired attorney Kevin M.

McMaster to investigate claims arising from the Fatality Collision and to represent its insureds in

a potential lawsuit.  The underlying case (the "Birk Lawsuit") was highly contested and spanned

several years.  As a result of McMaster's actions and inactions throughout the Birk Lawsuit, the

court entered sanctions against the Birk Defendants, including (1) deeming over 500 Requests

for Admission admitted as a result of failure to respond; (2) finding an alter-ego relationship

between Edward and Linda Birk and Birk Oil Company; and (3) striking the only comparative

fault expert on behalf of the Birk Defendants.  Additionally, both before and during the Birk

Lawsuit, Progressive and McMaster affirmatively misrepresented the existence of additional

insurance available through another carrier, which prevented an early settlement.

Before trial, the Birk Defendants entered into the Agreement and Assignment of Rights

(the "Agreement"), assigning to Gant any rights they had against Progressive in exchange for

Gant's covenant not to execute against the personal assets of the Birk Defendants.  The parties

agreed to a contested bench trial before Judge Goddrez, and the case went to trial in June 2015.

The court granted judgment in favor of Gant in the amount of $6,723,021; all of the Birk

---

[1]*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

Defendants were liable for some or all of the judgment.  The court apportioned no fault to Katie

Gant.  Pursuant to the Agreement, the judgment amount was partially satisfied with certain

insurance proceeds.  An unpaid balance of the judgment remains in the amount of $5,473,021,

plus $7,114.42 in costs and post-judgment interest that continues to accrue.

On September 15, 2015, Progressive filed this action for declaratory judgment, requesting

this Court to find that "its handling of the underlying claim and lawsuit was appropriate, in good

faith, and consistent with the Progressive Policy and all duties imposed upon it by law or

otherwise."  Progressive sought a declaration that it is not liable to Gant for damages in excess of

its policy limits.  Gant, as assignee of the Birk Defendants' rights against Progressive, filed an

Answer and Counterclaim asserting eight causes of action:  1) Assignment; 2) Vicarious

Liability; 3) Breach of Contract; 4) Breach of Duty of Good Faith; 5) Negligence; 6) Negligent

Misrepresentation; 7) Fraudulent Misrepresentation; and 8) Fraud Through Silence.[2]  In addition

to the unpaid balance of the judgment and costs of the Birk Lawsuit, Gant seeks interest, lost

profits, and attorney's fees.

## II.   Discussion

### A.  Motion for Leave to File Answer/Motion to Strike

Progressive failed to file a response to the motion for leave to file answer out of time and

the time to do so has expired.[3]  Under D. Kan. Rule 7.4,

> Absent a showing of excusable neglect, a party or attorney who fails to file
> a responsive brief or memorandum within the time specified in D. Kan.
> Rule 6.1(d) waives the right to later file such brief or memorandum. If a
> responsive brief or memorandum is not filed within the Rule 6.1(d) time
> requirements, the court will consider and decide the motion as an
> uncontested motion. Ordinarily, the court will grant the motion without

---

[2]Counterclaim, Doc. 18.

[3]*See* D. Kan. R. 6.1(d)(1) (requiring a response to a non-dispositive motion to be filed within fourteen days). Progressive's response deadline was June 16, 2016.

further notice.

As a result of Progressive's failure to respond, the Court may grant Gant's motion for leave to file answer out of time as uncontested.  Moreover, Progressive does not address Gant's arguments or reassert its motion to strike the answer in its reply brief, and thus appears to have dropped the issue.[4] Accordingly, the Court denies Progressive's Motion to Strike and grants Gant leave to file his Answer out of time.

### B.  Motion to Strike Counterclaim

"The twin purposes of a complaint are to give the opposing parties fair notice of the basis for the claims against them so that they may respond and to allow the court to conclude that the allegations, if proven, show that the plaintiff is entitled to relief."[5]  The requirements of Rule 8 are designed to meet these purposes.[6]

Rule 8(a) states that a complaint "must contain (1) a short and plain statement of the grounds for the court's jurisdiction, . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for the relief sought."[7]  Rule 8(a) is reinforced by Rule 8(d)(1), which provides that  "each allegation must be simple, concise, and direct."[8] "Taken together, Rules 8(a) and (d)(1) underscore the emphasis placed on clarity and brevity by

---

[4] *See* Doc. 53.

[5] *Aguilar v. Colo. State Governor*, No. 15-cv-1713-GPG, 2015 WL 4743069, at *1 (D. Colo. Aug. 15, 2015) (citing *Monument Builders of Greater Kansas City, Inc. v. Am. Cemetery Ass'n of Kan.*, 891 F.2d 1473, 1480 (10th Cir. 1989)).

[6] *Id.* (citation omitted).

[7] Fed. R. Civ. P. 8(a).

[8] Fed. R. Civ. P. 8(d)(1).

the federal pleading rules.  Prolix pleadings violate the requirements of Rule 8."[9]  Motions to strike, however, are disfavored.[10]

Progressive argues that the entire 180-page, 819-paragraph Counterclaim should be striken because it does not comply with the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure.  The Court disagrees.  The Counterclaim contains eight counts based on logically organized and intelligible facts stemming from prolonged underlying litigation. Moreover, two of Defendants' claims involve allegations of fraud, which are required to be plead with particularity.[11]  While the Federal Rules provide a mechanism for courts to strike or dismiss pleadings rife with confusing, conclusory allegations without supporting factual content, this is not the case here.  Given the high pleading standards required by Rules 8 and 9 and the nature of the underlying facts and claims, the Counterclaim is at most, overly thorough rather than prolix. Other than the time burden of answering the numerous allegations, Progressive fails to show how it is prejudiced by the Counterclaim; indeed, it was able to fashion a comprehensive motion to dismiss based on the allegations in the Counterclaim.  That being said, as discussed in detail below, the Court finds that Gant's eight enumerated counterclaims are either predicate counts or not viable, and many of Progressive's complaints about the Counterclaim may be resolved by an amended Counterclaim.  The motion to strike is denied, and the Court turns to the merits of the Counterclaim.

### C.  Motion to Dismiss for Failure to State a Claim

Progressive moves for dismissal of all counts in the Counterclaim under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted.  In order to pass muster

---

[9]*Aguilar*, 2015 WL 4743069, at *1 (citing *Schupper v. Edie*, 193 F. App'x 744, 745–46 (10th Cir. 2006)).

[10]*Falley v. Friends Univ.*, 787 F. Supp. 2d 1255, 1257 (D. Kan. 2011) (discussing motion to strike under Fed. R. Civ. P. 12(f)).

[11]Fed. R. Civ. P. 9(b)

under Rule 12(b)(6), "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[12]  The plausibility standard does not require a showing of probability that a defendant has acted unlawfully, but requires more than "a sheer possibility."[13]  "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."[14]  Finally, the Court must accept the nonmoving party's factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[15]

The Supreme Court has explained the analysis as a two-step process.  For the purposes of a motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but] we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"[16]  Thus, the court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[17]  Second, the court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[18]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[19]

---

[12]*Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[13]*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[14]*Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

[15]*Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[16]*Id.*

[17]*Id.* at 679.

[18]*Id.*

[19]*Id.* at 678.

If the Court on a Rule 12(b)(6) motion looks to matters that were not attached to the complaint or incorporated into the complaint by reference, it generally must convert the motion to a Rule 56 motion for summary judgment.[20]  However, the court may consider documents which are referred to in the complaint if they are central to the plaintiff's claim and the parties do not dispute their authenticity.[21]

### 1.   Counts 1 and 2:  Assignment and Vicarious Liability

Count 1 ("Assignment") is not a cause of action, but rather a predicate count that indicates the claims derive from the Birk Defendants' assignment to Mr. Gant of their rights against Progressive.   Likewise, Defendant concedes that Count 2 ("Vicarious Liability"), is not an independent tort claim, but rather an "aspect" of his bad faith/negligence claim.  Thus, dismissal of these counts is appropriate.

### 2.   Counts 3, 4 and 5: Breach of Contract, Breach of Duty of Good Faith, and Negligence

Under long-standing Kansas law, an action to address an insurer's alleged breach of the duty to act in good faith in defending and settling a claim against its insured sounds in breach of contract.[22]  Kansas has adopted "the principle that the insurer's duties are contractually based and then approved a tort standard of care for determining when the contract duty has been breached."[23]  The Kansas Supreme Court noted, "[p]erhaps this contract/tort relationship has contributed to the confusion arising from our efforts to describe the duty of good faith and to identify the situations involving bad faith/negligent duty to settle to defend," acknowledging that

---

[20]Fed. R. Civ. P. 12(d); *GFF Corp. v. Associated Wholesale Grocers,* 130 F.3d 1381, 1384–85 (10th Cir. 1997).

[21]*See Alvardo v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007); *GFF Corp.*, 130 F.3d at 1384–85.

[22]*Moses v. Halstead*, 581 F.3d 1248, 1251 (10th Cir. 2009) (citing *Glenn v. Fleming*, 799 P.3d 79, 90 (Kan. 1990)).

[23]*Glenn*, 799 P.3d at 90.

the Court had long "used 'negligence,' 'due care,' and other tort expressions to describe the
substance of what is a contract duty."[24]

"Inherent in virtually every contract—including an insurance policy—is the duty of all
parties to perform their contractual obligations in good faith."[25]  "In the context of a liability
insurance contract, an insurer must exercise good faith in defending the lawsuit and in
negotiations related to settlement."[26]  The duty to exercise good faith includes "the duty to hire
counsel that is competent to defend the allegations against its insured and to provide such
counsel with adequate resources to competently defend the suit."[27]  In Kansas, "an attorney hired
by an insurer to represent an insured can be considered an agent of the insured, making the
insurer vicariously liable for the attorney's actions—if, at the time in question, the attorney's acts
or omissions were directed, commanded, or knowingly authorized by the insurer."[28]  "When
there are facts to demonstrate that the attorney violated these rules and allowed the insurer to
direct or control the attorney's actions in defending the insured, the attorney likely will be
considered the agent of the insured and, in turn, the insurer may be held vicariously liable for the
attorney's negligent conduct."[29]

Established Kansas law also holds that an insurance company's negligent or bad faith
rejection of an injured party's offer to settle within the policy's limits constitutes a breach of its
contract with the insured and gives rise to liability for any judgment in excess of the policy

---

[24]*Id.*

[25]*Estate of Draper v. Bank of Am.*, 205 P.3d 698, 710 (Kan. 2009).

[26] *Hackman v. W. Agric. Ins. Co.*, 275 P.3d 73 (Table), 2012 WL 1524060, at *11 (Kan. Ct. App. Apr. 27, 2012).

[27]*Id.*

[28]*Id.* at *16 (citing *Pac. Empl. Ins. v. P.B. Hoidale, Co.*, 789 F. Supp. 1117, 1122–23 (D. Kan. 1992)).

[29]*Id.* (citing *Bell v. Tilton*, 674 P.2d 468, 472 (Kan. 1983)).

8

limits.[30]  The same rule applies to instances in which the insurance company negligently or in

bad faith delays in accepting an offer to settle within the policy's limits.[31]  Further, "there must

be a causal link between the insurer's conduct and the excess judgment against the insured."[32]

Here, Gant attempts to advance both contract and tort claims.  In Count 3, Gant alleges

Progressive breached its insurance policy contract and the duties arising therefrom both directly

and through the actions of counsel McMasters.  Count 3 proffers a seven-page litany of actions

by Progressive and McMaster that allegedly prejudiced the Birk Defendants, including, *inter

alia*,  Progressive's prior characterization of McMaster's actions as "highly prejudicial" and "to

the extreme detriment of [the Birk] Defendants"; hiding and denying the existence of an

additional policy, which prevented a settlement within policy limits and necessitated a lawsuit

resulting in an excess judgment against the Birk Defendants;[33] failing to respond to hundreds of

RFAs eliminated Justin Birk's defense and made it impossible for Linda and Edward Birk to

defend against the claim of negligent entrustment;[34] disobeying court orders led to the striking of

the Birk Defendant's only expert witness, who was to testify about Katie Gant's alleged

cellphone use, and thereby eliminated the chance for the Birk Defendants to attribute fault to Ms.

Gant at trial;[35] and making misrepresentations and defying court orders, resulting in sanctions

---

[30]*See Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 660 (10th Cir. 2007) (citing *Bollinger v. Nuss*, 449 P.2d 502, 508 (1969)).

[31]*See id.* at 667 (citing *Glenn*, 799 P.2d at 82).

[32]*Roberts v. Printup*, 595 F.3d 1181, 1187 (10th Cir. 2010) (quoting *Hawkins v. Dennis*, 905 P.2d 678, 690 (Kan. 1995) (citing *Snodgrass v. State Farm Mut. Auto Ins. Co.*, 804 P.2d 1012, 1021 (Kan. Ct. App. 1991)).

[33]Counterclaim, Doc. 18 at ¶ 754(a), (f).

[34]*Id.* ¶ 754(c).

[35]*Id.* at ¶ 754(b).

deeming the Birk parents and Birk Oil Company to be alter egos, increasing significantly the personal liability assigned to each by the finder of fact.[36]

Counts 4 and 5 allege that Progressive breached its duty of good faith and was negligent, citing what appears to be the same litany of actions by Progressive and McMaster as set forth in Count 3.  It is clear, however, that the tort claims in Counts 4 and 5 will not lie under Kansas law, as "[t]he Kansas Supreme Court has explicitly rejected the contention that the failure of an insurer to meet its contractual duties can give rise to a claim of negligence."[37]  Counts 4 and 5 are an example of the confusion described by the Kansas Supreme Court, as Gant appears to concede that the tort claims are improper, noting "the allegations under Counts 4 and 5 support the ultimate breach of contract claim, but they are not independent claims themselves."[38]  Gant further explains that his "primary claim could be conceptualized as one claim or three," and that the three counts all work together to determine Progressive's liability, "i.e., Progressive breached its duty to defend because it defended the Birk Defendants in bad faith, and negligently."[39]  Accordingly, neither Count 4 nor 5 states an independent cause of action and must be dismissed.

While it appears that some combination of Counts 3, 4 and 5 may set forth a plausible counterclaim against Progressive for breach of contract, the Court is not inclined to cull through Gant's mashup of allegations and claims to construct a legal theory on his behalf.  Accordingly, the Court will also grant Progressive's motion to dismiss Count 3, without prejudice to amend that Count to include the relevant allegations and elements of the claims in Counts 4 and 5 to

---

[36]*Id.* at ¶ 754(d).

[37]*Wade v. EMCASCO Ins. Co.*, No. 03-1276-JTM, 2004 WL 5550384, at *12 (D. Kan. Dec. 29, 2004), *aff'd*, 483 F.3d 657 (10th Cir. 2007) (citing *Guar. Abstract & Title v. Interstate Fire & Cas.*, 652 P.2d 665, 668−69 (Kan. 1982)) (holding that "a claim that an insurer acted negligently in performing its contractual duty to defend on behalf of the insured does not create a tort action").

[38]Doc. 44 at 22.

[39]*Id.* at 16.

reflect the tort standard of care inherent in the breach of contract claim, as well as any relevant allegations set forth in predicate Counts 1 and 2, assignment and vicarious liability.

### 3.   Counts 6, 7, and 8: Independent Tort Claims

As previously discussed, this cause of action arises out of an Agreement to assign the Birk Defendant's rights against Progressive to Gant.  Gant now asserts in his response that Count 6 (Negligent Misrepresentation), Count 7 (Fraudulent Misrepresentation), and Count 8 (Fraud Through Silence) are intended to be asserted as individual tort claims that are independent of his breach of contract claim.  Each of the Counts specifically avers, however, that "Gant brings this claim pursuant to his rights under the Agreement, wherein the Birk Defendants have assigned to him any rights they had against Progressive."[40]  It is axiomatic, however, that claims sounding in tort are not assignable under Kansas law.[41]

Moreover, neither Counts 6, 7 and 8 nor the voluminous factual portion of the Counterclaim sets forth any basis for damages independent of those suffered by the Birk Defendants.  The Court declines to amend the Counterclaim by way of a responsive pleading, and thus grants Progressive's motion to dismiss these counterclaims, without prejudice to amend to assert individual claims for relief.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Motion to Strike Answer and Counterclaim (Doc. 30) is DENIED; Defendant Gant's Motion for Leave to File Answer Out of Time (Doc. 45) is GRANTED.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Dismiss Counterclaim (Doc. 30) is GRANTED as follows:  Counts 1, 2, 3, and 4 are dismissed for failure to state a claim; Count 3 is dismissed without prejudice to amend to include the relevant claims set forth in

---

[40]Counterclaim , Doc. 18 at ¶¶ 793, 807, 819.

[41]*Bolz v. State Farm Mut. Auto Ins. Co.*, 52 P.3d 898, 901 (Kan. 2002) (collecting cases).

Counts 2, 4 and 5; Counts 6, 7, and 8, are dismissed without prejudice to amend to assert individual tort claims.  Defendant Gant shall file an Answer and Amended Counterclaim within fourteen (14) days of the date of this Order.

       **IT IS SO ORDERED.**

       Dated: August 22, 2016

                                    /s/ Julie A. Robinson
                                    JULIE A. ROBINSON
                                    UNITED STATES DISTRICT JUDGE