## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

PROGRESSIVE NORTHWESTERN )
INSURANCE COMPANY, )
                               )
     Plaintiff/Counterclaim Defendant, )
                               )
v.                              )     Case No.15-9267-JAR/KGG
                               )
GABRIEL GANT, *et al.*, )
                               )
     Defendants/Counterclaim Plaintiffs. )
_____)

## ORDER ON DEFENDANT'S MOTION TO COMPEL

Now before the Court is Defendant's Motion to Compel.  (Doc. 116.)  For the reasons set forth below, Defendant's motion is **GRANTED in part** and **DENIED in part** as more fully set forth below.

## BACKGROUND

This is a declaratory judgment action brought by Plaintiff Progressive Northwestern Insurance Company ("Plaintiff" or "Progressive").  Plaintiff requests a finding that its handling of an underlying claim and lawsuit, resulting from a fatal automobile accident, "was appropriate, in good faith, and consistent with the Progressive Policy and all duties imposed upon it by law or otherwise."  (*See* Doc. 1, at 5; Doc. 14, at 7.)  Issues with the handling relate specifically to counsel (Kevin McMaster) retained by Plaintiff for its insured, who were defendants in the

underlying action.  McMaster is alleged to have engaged in conduct described as "obstructionist," "highly prejudicial," and "to the extreme detriment" of the defendants in the underlying lawsuit.  (*See generally* Doc. 6-5.)

Additional facts relating to this case, as well as to the underlying lawsuit, were summarized in the District Court's Memorandum and Order granting Defendants leave to answer out of time, Plaintiff's motion to strike, and Plaintiff's motion to dismiss.  (*See* Doc. 92, at 1-3.)  That summary is incorporated herein by reference.

The present motion relates to Plaintiff's responses to Defendants' first Requests for Production and first Interrogatories.  (Docs. 116, 117.)  In response to the discovery requests, Plaintiff initially agreed to engage in a rolling production of documents.  Defendants contend that the "production contained extensive redactions and otherwise fell short of the production that was necessitated in response to [Defendants'] First Requests."  (Doc. 117, at 4.)  The parties met and conferred as required by Fed.R.Civ.P. 37 and D. Kan. Rule 37.2 and also engaged in a pre-motion telephone conference with the undersigned Magistrate Judge. Even so, Defendants contend that "it is clear that certain documents and information continue to be withheld by Progressive from production."  (Doc. 117, at 4.)

## DISCUSSION

Fed.R.Civ.P. 26(b) states that

> [p]arties may obtain discovery regarding any nonprivileged
> matter that is relevant to any party's claim or defense and
> proportional to the needs of the case, considering the
> importance of the issues at state in the action, the amount in
> controversy, the parties' relative access to relevant
> information, the parties' resources, the importance of the
> discovery in resolving the issues, and whether the burden
> or expense of the proposed discovery outweighs its likely
> benefit.  Information within this scope of discovery need
> not be admissible in evidence to be discoverable.

As such, the requested information must be both nonprivileged and relevant to be

discoverable.  Within this framework, the Court will review the contested

discovery responses.

**A.    Progressive's Knowledge of McMaster's Conduct in Prior Claims
(Requests 9-16, Interrogatories 19-22).**

Defendants argue that Progressive should be compelled to produce

"information and documentation demonstrating Progressive's notice, prior to the

[underlying claim/lawsuit], of McMaster's conduct in prior claims and cases that

put Progressive's insureds at risk of excess exposure and unnecessary litigation

because such information falls within the permissible scope of discovery."  (Doc.

117, at 5.)

**1.    Requests 9-14.**

Requests Nos. 9-14 each reference a different case in which Progressive retained McMaster in which McMaster is alleged to have engaged in behavior ranging from uncooperative to inappropriate or unethical.  (*See* Doc. 117-1, at 15-23.)  As to each specific case, Defendants request an extensive amount of information, including pleadings, court orders, transcripts of hearings, all discovery served in the case, all correspondence exchanged between counsel, and all correspondence between Progressive and McMaster or his law firm.[1]  (*Id*.)  As to Request No. 14, Defendants also seek "[a] copy of any internal communication and/or analysis of the issue of McMaster's conflict of interest and/or perceived conflict of interest."  (*Id*., at 23.)

Progressive objects that the Requests are overbroad, burdensome and irrelevant as they seek information that is "completely unrelated" to the underlying lawsuit.  (*Id*., at 16-23.)  Progressive also objects that the various cases identified and the matters at issue therein "are not relevant to the instant cause of action and this Request is not within the proper scope of discovery."  (*Id*.)  Progressive continues that the Requests are

> overbroad, vague, indefinite and burdensome to the extent it requires Progressive to search every computer

---

[1] The Requests all specify that "[t]o the extent you contend the Documents contain HIPAA protected material, such material may be redacted."  (*Id*.)

4

> system and source of electronic and hard copy
> information or all of its communication systems in
> response to this Request.  Progressive also objects to the
> extent this Request poses an undue burden and seeks to
> require the production of not reasonably accessible data,
> including but not limited to, backup tapes. Further,
> certain of the requested materials appear to be available
> in the public record.

(*Id*., at 16-23.)[2]

The Court agrees that, generally, evidence of prior notice to the insurer of McMaster's previous bad conduct in other cases is relevant to Defendants' theory of Progressive's potential negligence or bad faith in retaining McMaster to represent its insureds.  The Court also acknowledges Defendants' argument that the requests are proportional to the needs of the case pursuant to Fed.R.Civ.P. 26 given the significant outstanding judgment in this case.  (Doc. 117, at 10-11.)

Even so, the Court finds the Requests at issue to be inherently overbroad and unduly burdensome.  This is especially true of the information that is available to Defendants as public record (pleadings, court orders, etc.) or through other sources (transcripts).  Plaintiff's objection as to pleadings, court orders, and other documents of public record is **sustained**.

---

[2]  As to Requests 10-16, Progressive objects on the basis of the attorney-client privilege, work product doctrine, "or any other privilege." (*Id*., at 18-25.)  The Court notes that the issue of privilege as to these Requests is not raised in Defendants' motion.

Defendants' requests for all discovery, all correspondence exchanged between counsel, and all correspondence between Plaintiff Progressive and McMaster are also facially overbroad.  Discovery exchanged and answered by both parties on any and all topics relevant to other the lawsuits identified would clearly encompass more information that was irrelevant than relevant.  All of the requested correspondence in these cases would equally encompass volumes of documents that are entirely irrelevant to these proceedings.

Plaintiff's overbreadth and burdensome objections are **sustained** as to the requested discovery and correspondence sought in Requests Nos. 9-14. Defendants' motion is **DENIED** in regard to Requests Nos. 9-14.  Because the discovery requests are so broadly written, the Court cannot endeavor to rewrite or narrow them to make them appropriate.  To the extent Defendants want specific information that is encompassed within these categories, Defendants are instructed to serve revised discovery requests.

### 2.    Request No. 15, Interrogatory No. 19.

Request No. 15 corresponds to Interrogatory No. 19, which seeks information as to cases in which McMaster was sanctioned while retained to represent one of Plaintiff's insureds.  (Doc. 117-1, at 24; Doc. 117-2, at 14.)  As to such cases, Defendants seek various subcategories of information, including the

case caption, the claims adjuster assigned, the insured represented by McMaster, the sanction issued and relevant events, identities of other attorneys involved. (Doc. 117-2, at 14.)  Defendant also requests "all motions and orders related to the issue of sanctions as well as transcripts of hearings where the issue of sanctions was addressed."  (Doc. 117-1, at 24.)

Plaintiff objects that these discovery requests are overbroad, unduly burdensome, and not within the proper scope of discovery as they seek information unrelated to the underlying lawsuit as well as information that is at least in part available in the public record.  (Doc. 117-1, at 25.)  Even so, Plaintiff "has undertaken a laborious electronic search of past claims in which McMaster was involved, and cannot find any additional claims in which McMaster, Progressive, or a Progressive insured was actually sanctioned by a court" until the underlying lawsuit.  (Doc. 134, at 4, 6 (emphasis removed).)  The Court finds that Plaintiff's additional investigatory efforts and offer to supplement its responses sufficiently resolve the issues relating to Request No. 15 and Interrogatory No. 19. Plaintiff's objections are **overruled** and the responses are deemed amended as stated.

### 3.    Request No. 16, Interrogatory No. 20.

These discovery requests seek information "providing notification to

Progressive that McMaster was or may be acting with improper conduct and/or had a history of acting with improper conduct with regard to his handling of a case in which he was retained by Progressive to represent Progressive and/or a Progressive Insured(s)."  (Doc. 117, at 9; *see also* Doc. 117-1, at 25-26, Doc. 117-2, at 16-17.)  Defendants ask Plaintiff to provide identifying information as to each such claim or case, as well as the adjuster assigned, the party insured, the attorneys representing other parties, and the manner and date of notification.  (Doc. 117-2, at 16-17.)

Plaintiff initially objected, in part, that the "identification of any such case and Mr. McMaster's conduct in same would be wholly irrelevant to the matters at issue and would not be reasonably calculated to lead to the discovery of admissible evidence as to whether Progressive breached the at issue contract." (*Id.*, at 17.)  In its brief in opposition, Plaintiff argues as to the vagueness of various terms, including "improper conduct" and instances in which it had notice that McMaster "may be" acting in such a manner.  Defendant clarified "improper conduct" to encompass instances where McMaster "may have" caused "increased and/or unnecessary delay . . . [or] expenses," "victimizing," and "increasing the risk of personal exposure to the insureds.  (Doc. 134, at 7.)

With these clarifications, the Court **overrules** Plaintiff's objections to these

8

discovery requests.  Defendants' motion is **GRANTED** as to Request No. 16 and Interrogatory No. 20.

### 4.    Interrogatory No. 21.

In this interrogatory, Defendants ask Plaintiff whether it has "ever been sued for bad faith, breach of contract, and/or negligence" as to a claim or case in which McMaster represented it or its insureds.  (Doc. 117-2, at 17.)  As to any such claim or case, Plaintiff was asked to provide identifying information as to each such claim or case, as well as the attorney who filed such an action, the parties insured by Plaintiff in any such underlying action, any attorney retained by Plaintiff in the underlying action, the adjuster assigned, the party insured, and the disposition of the claim.  (Doc. 117-2, at 18.)  Plaintiff objects as to overbreadth and relevance, arguing that potential breaches of other contracts are "irrelevant as to whether or not the Plaintiff breached the contract at issue."  (*Id.*, at 19.)

The Court **sustains** Plaintiff's objections in part and limits Interrogatory No. 21 to cases in which the resulting lawsuit was based on the conduct or performance of McMaster.  With these limitations, Defendants' motion is **GRANTED** as to Interrogatory No. 21.

### 5.    Interrogatory No. 22.

This interrogatory asks Plaintiff to identify all claims or cases in which it

had "retained McMaster to represent [it and/or its insured(s)] and at a later time retained new counsel . . . instead of McMaster." (Doc. 117-2, at 19.)  As to any such claim or case, Plaintiff was asked to provide identifying information for the claim or case, identify the adjuster assigned, the date McMaster was retained, the party for whom he was retained, the date replacement counsel was retained, whether a written request was made to McMaster to withdraw, and the reason for the replacement. (*Id.*, at 19-20.)

Plaintiff objects that the interrogatory is overly broad and irrelevant. (*Id.*, at 20.)  Plaintiff also argues that these occurrences are "wholly irrelevant . . . and would not be reasonably calculated to lead to the discovery of admissible evidence." (*Id.*, at 20.)

The Court finds the information requested to be relevant to the issues between the parties and proportional to the case.  The Court also finds that the subparts are topically related and do not constitute separate and distinct interrogatories.  Plaintiff's objections are **overruled**.  Defendants' motion is **GRANTED** as to Interrogatory No. 22.

**B.    The Relationship between Plaintiff and McMaster.**

**1.    Billing statements.**

Request No. 8 seeks "complete and unredacted billing statements" Plaintiff

received from McMaster or his law firm(s) in the underlying lawsuit.  Plaintiff

initially objected that the bills contain "descriptions of work performed on behalf

of the insured" which are protected by the attorney-client privilege and work

product doctrine, that McMaster's billing rates constitute "proprietary confidential

business information," and that the requested documents are "not within the proper

scope of discovery."  (Doc. 117-1, at 14.)  Based on Plaintiff's responsive brief,

these objections are waived.  As such, Plaintiff is ordered to provide any and all

billing statements that have not yet been produced.  This portion of Defendants'

motion is **GRANTED**.

### 2.    The date Plaintiff first had "concerns."

Relying on Plaintiff's prior representation that it had "concerns regarding

[McMaster's] handling" of the underlying lawsuit, Defendant asked Plaintiff to

identify the date it first had such "concerns."  (Doc. 117-2, at 9, Interrogatory No.

12.)  Defendant also asked Plaintiff to identify "who at or on behalf of Progressive

developed these 'concerns,' and identify any documents evidencing such

'concerns.'"  (*Id*.)  Plaintiff attempts to distance itself from the statement as it was

contained in a motion that was "quickly withdrawn, and never ruled upon by the

underlying court . . ."  (Doc. 134, at 16.)  The Court is not persuaded by Plaintiff's

attempts to put this cat back in the proverbial bag.  It is uncontroverted that the

statement was made, regardless of what occurred with the motion in which it was contained.

Plaintiff states, however, that "[t]o the extent [it] is in possession of information relevant to this request, such as claims file materials and correspondence, it has been produced and the Motion is moot on this point." (*Id*.) Defendants do not agree that Plaintiff has sufficiently responded as the responsive documents fail to "identify the date [Plaintiff] developed concerns regarding Mr. McMaster's handling of the case."

To the extent any document(s) previously produced are responsive to Interrogatory No. 12, Plaintiff must specify, by Bates number, such responsive documents. *See* Fed.R.Civ.P. 33(d). If no document specifically states the date on which such concerns began to materialize and the individual(s) who developed such concerns, Plaintiff is hereby ordered bo provide a narrative response to Interrogatory No. 12 providing this information. Defendant's motion is **GRANTED** in regard to Interrogatory No. 12.

### 3.   Files created and/or maintained on McMaster.

Request No. 20 succinctly asked Plaintiff to "[p]roduce any file you maintain on Kevin M. McMaster." (Doc. 117-1, at 28.) Although Defendants refer to a particular evaluation of McMaster, Plaintiff argues in its responsive

12

brief, Plaintiff contends that it "does not maintain a specific 'file' on McMaster." (Doc. 134, at 16.)  Rather, the document at issue is a part of Plaintiff's "systematic evaluation of all attorneys on its Kansas defense panel, relative to one another . . . ."  (*Id*.)

Although such a document could be contained in a "McMaster file" if Plaintiff maintained such a file, Plaintiff has indicated that it does not maintain McMaster-specific file(s).  Defendants' Request No. 20 does not seek Plaintiff's "systematic evaluation[s] of all attorneys on its Kansas defense panel."  If Defendant wants such documents, it is directed to serve a request seeking such documents.[3]  Defendants' motion is **DENIED** as to Request No. 20.

### 4.    Internal communications regarding McMaster.

Defendant's Request for Production No. 21 seeks "all internal communications among individuals at Progressive regarding Kevin M. McMaster."  (Doc. 117-1, at 28.)  Plaintiff argues that the request is "onerous" and seeks "unfettered access to more than a decade of claim and litigation files wholly irrelevant to the pending action."  (Doc. 134, at 17.)  Plaintiff continues that the request is not even limited by subject matter and does not "attempt to

---

[3]  The Court is not, however, opining as to whether or not such a hypothetical request would be objectionable.

identify any other relevant connection to this action," making "a response to this request impossible." (*Id.*)  In their reply brief, Defendants counter that "internal communications about McMaster, such as communications that occurred each time an attorney informed Progressive that McMaster was acting in a matter that prejudiced Progressive's insureds, is relevant."  (Doc. 159, at 16.)

The Court acknowledges the potential relevance of internal communications on this subject.  Unfortunately for Defendants, however, the request, as written, contains no such qualifiers or limitations.  As such, it is facially overbroad.  Defendants' motion is  **DENIED** in regard to Request No. 21.

### 5.    List of claims/cases for which McMaster was retained.

Request No. 19 asks Plaintiff to "[p]roduce a list of all claims/cases in which Progressive retained Kevin M. McMaster to represent" it or an insured "including the claim/case number and the Court where any such cases were pending, if a case was filed."  (Doc. 117-1, at 27.)  As to each such case/claim, Plaintiff is asked to "produce a list showing the claim/case number, any claims adjuster(s) who was and/or were assigned to the claim/case, and the Court where any such cases were pending and case number, if a case was filed."[4]

_____

[4]  In their motion, Defendants discuss Request No. 19 with Interrogatory No. 21, in which Plaintiff was asked to provide similar information for each time it has been "sued for bad faith, breach of contract, and/or negligence with regard to a claim and/or case in

Plaintiff objects that "this request is merely another foray into irrelevancy via an attempt to identify decades' worth of legal work by McMaster wholly unrelated to the pending action."  (Doc. 134, at 17.)  The Court does not agree. Although it is possible that not all of this information will be admissible at trial (which is a determination to be made by the District Court at a later time), the undersigned Magistrate Judge finds that the information requested is both relevant and proportional to the needs of the case.  Defendants' motion is **GRANTED** in regard to Request No. 19.

## C.     Potential Waiver of the Attorney-Client Privilege.

Defendants contend that Plaintiff's filing the present declaratory judgment action requesting a finding that it acted reasonably in the defense of the underlying lawsuit, Plaintiff has "waived any claim to the attorney-client privilege."  (Doc. 117, at 16-17.  Defendants as the Court to "compel Progressive to release internal communications and other documents that address Progressive's handling of the

---

which it had, at any point, retained Kevin M. McMaster to represent itself and/or its Insureds[.]"  (*See* Doc. 117, at 15-16; Doc. 117-2, at 17.)  The Court surmises that the reference to Interrogatory No. 21 in conjunction with Request No. 19 may have been a clerical error as the interrogatory is much more specific (dealing with being sued for bad faith, breach of contract and/or negligence) as opposed to Request No. 19 (which simply relates to any case for which McMaster was retained, regardless of whether lawsuits or legal claims were resulting therefrom).  Further, Interrogatory No. 21 has been previously analyzed by the Court, *supra*.

internal lawsuit." (Doc. 117, at 16.)

The relevant three-part test to determine whether a party has waived the attorney-client privilege was enumerated in ***Hearn v. Ray***, 68 F.R.D. 574 (E.D. Wash. 1975), a decision from the Eastern District of Washington that has been frequently cited in this District.  Therein, the Court held that

> the party asserting the privilege placed information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such information would have been manifestly unfair to the opposing party.  The factors common to each exception may be summarized as follows:  (1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense.  Thus, where these three conditions exist, a court should find that the party asserting a privilege has impliedly waived it through his own affirmative conduct.

*Id.*, at 581.

Defendants argue that Plaintiff should be compelled to release its internal communications regarding the handling of the underlying lawsuit because these communications were placed in issue by allegations contained in the Amended Complaint.  (Doc. 117, at 16.)  By example, Defendants refer to Plaintiff's

allegation that its "handling of the underlying claim and lawsuit was appropriate, in good faith, and consistent with the Progressive policy and duties imposed upon it by law or otherwise."  (*Id.*, citing Doc. 14, at ¶ 42.)

Filing a lawsuit does not waive the privilege of a plaintiff in communications with its attorneys about the subject matter of the lawsuit.  Waiver does not occur when, as in the present case, "the attorney-client communications are merely relevant to claims" rather than "integral" to the claim itself.  *AKH Co. Inc. v. Universal Underwriters Ins. Co.*, 300 F.R.D. 684, 694 (D. Kan. 2014) (citing *Cincinnati Insurance Company v. Serrano*, No. 11-2075-JAR-KGG, 2011 WL 6304086 (D.Kan. Dec. 16, 2011)).  To hold otherwise would be dangerously close to finding an automatic waiver of the attorney-client privilege whenever this type of declaratory judgment action is filed.  This could change, however, if Plaintiff interposes these communications in its defense of Defendants' claims.

This is not to say whether certain, more specific categories of otherwise protected information are"integral" to the claims at issue.  In their supporting memorandum, however, Defendants have not argued waiver of the privilege regarding particular types or categories of information let alone specific documents themselves.  Rather, Defendants merely argue that the attorney-client privilege should be deemed waived as to all "internal communications and other

17

documents that address Progressive's handling of the underlying lawsuit." (Doc. 117, at 16.) Defendants have not provided adequate justification for such a blanket waiver. As such, this portion of Defendants' motion is **DENIED**.

## D.    Confidential Designations.

The Protective Order entered in this case allows a party producing records to designate them as "Confidential Information." (*See generally* Doc. 95.) Documents that have been so designated are afforded certain protections by the Order, including a limitation on who may view the documents and seeking permission to file such documents under seal when submitting them as exhibits to motions filed with the Court. (*Id.*, at 4-6.) "Confidential Information" is defined by the Protective Order "as information that the Producing Party designates in good faith has been previously maintained in a confidential manner and should be protected from disclosure and use outside the litigation because its disclosure and use is restricted by statute or could potentially cause harm to the interests of disclosing party or nonparties." (Doc. 95, at 1-2.)

The Protective Order then goes on to limit the types of documents that can be so designated to a list of categories, including attorney-client communications or work product, specific types of proprietary and/or trade secret information, claim face sheet notes with regard to any claim in which discovery is agreed or

ordered by the Court, medical records, tax records, personnel records, and financial records.  (*Id*., at 2-3.)  The Order states that "[i]nformation or documents that are available to the public may not be designated as Confidential Information."  (*Id*., at 3.)

Defendants complain that Plaintiff "has continually failed to use good faith in the application of its confidential designations" pursuant to the Protective Order.  (Doc. 117, at 28.)  This, according to Defendant, has "required [Defendant] to file numerous motions for leave to file under seal because of improper, liberally applied, confidential designations, and [Defendant] will be required to file further motions if Progressive continues in its refusal to remove such confidentiality designations."  (*Id*.)  Plaintiff responds that it "has limited the application of the 'confidential information' designation to proprietary information which has been previously maintained in a confidential manner, and which, if disclosed could result in significant damage to [Plaintiff's] business," such as its "corporate strategy for claim management" including "claim documentation, to expert retention, and to methods of litigation overview."  (Doc. 134, at 31.)

Defendants' motion includes a list of examples of documents that Plaintiff has designated as confidential but that, in Defendants' opinion, "should not be entitled to protection."  (Doc. 117, at 27.)  The Court will review each of these

documents in turn.

**1.      PROGRESSIVE 0018326-0018327.**

This document consists of communication between "Additional Counsel for the Birk Defendants, Jean Kelly, and Courtney Schroeder (Progressive Claims Specialist) describing Additional Counsel's review of the Birk Lawsuit, his opinions on proposed briefing . . . , and his opinions on the status of the . . .. Lawsuit in light of its defense prior to his involvement."  (Doc. 128-7, sealed.) This document does not consist of proprietary, claims-handling information.  As such, it should not be marked "confidential" pursuant to the Protective Order.

**2.      PROGRESSIVE 0027572.**

This is an internal message between Progressive Claims Specialist and Progressive Claims Director regarding conference call on the Birk Lawsuit.  (Doc. 128-8, sealed.)  This document does not consist of proprietary, claims-handling information.  As such, it should not be marked "confidential" pursuant to the Protective Order.

**3.      PROGRESSIVE 0018441-0018442.**

This consists of communication between counsel for the defendants in the underlying lawsuit sent to Progressive Claim Specialist regarding insurance applicable to the underlying lawsuit.  (Doc. 128-9, sealed.)  Although discussing

the underlying claim, the Court finds nothing proprietary about this communication. It, therefore, should not be marked "confidential" pursuant to the Protective Order.

### 4.   PROGRESSIVE 0028891-288992.

This document is communication between Hansel (Progressive Claims Adjuster assigned to the underlying lawsuit) and McMaster regarding the underlying lawsuit. (Doc. 128-10, sealed.) This document also discusses the underlying claim. Even so, the Court finds nothing proprietary about this communication. It, therefore, should not be designated as "confidential."

### 5.   PROGRESSIVE 28859-28860 and PROGRESSIVE 0012765.

The former document is an e-mail from an expert retained by Plaintiff to the claims adjuster assigned to the underlying lawsuit. (Doc. 128-11, sealed.) It encloses the expert's CV and cost estimate for expert work on the underlying lawsuit. The latter document is an invoice from an expert retained by Plaintiff for work on the underlying lawsuit. (Doc. 128-12, sealed.) The documents include pricing and budgeting information that may be considered proprietary. The Court finds the confidential designation was appropriate for this document.

### 6.   PROGRESSIVE 0029370-29371.

This is correspondence from McMaster to Plaintiff's claims adjuster

assigned to the underlying lawsuit outlining the status of discovery and budgeting in the underlying lawsuit. (Doc. 128-13, sealed.) Included therein is pricing and budgeting information that may be considered proprietary. The Court finds the confidential designation was appropriate for this document.

### 7.     PROGRESSIVE 0016107 and PROGRESSIVE 0016314.

The former is correspondence between Plaintiff's claims adjuster assigned to the underlying lawsuit and his non-attorney supervisor regarding the events in the underlying lawsuit. (Doc. 128-14, sealed.) The latter is e-mail between non-attorney employees of Plaintiff authorizing payment to additional counsel retained in the underlying lawsuit and briefly describing why this counsel was retained. (Doc. 128-15, sealed.) There is nothing proprietary about these communications. Therefore, they should not be marked "confidential" pursuant to the Protective Order.

### 8.     PROGRESSIVE 0016127-0016128.

Defendants next submit e-mail between outside legal counsel retained in the underlying lawsuit and Plaintiff's claims adjuster assigned to that case regarding an expert retained in the underlying lawsuit. The e-mail was also forwarded to one of Plaintiff's non-attorney claims supervisors. (Doc. 128-16, sealed.) Included therein is pricing and budgeting information that may be considered proprietary.

The Court thus finds the confidential designation was appropriate for this document.

**9.   Representative sampling of Plaintiff's "face sheet notes" and claims sheet notes specific to the underlying lawsuit.**

Finally, Defendants list a sampling of Plaintiff's "face sheet notes" and claims sheet notes from the underlying lawsuit.  (Doc. 128-1, sealed.)  The documents contain notations regarding litigation developments in the underlying lawsuit.  The Court does not, however, find any of the information contained therein to be proprietary.  As such, the documents should not have been designated confidential.

Defendants also request that, in addition to a review of the above-listed documents, the Court "provide further direction to [Plaintiff] as to what can – and cannot – properly be designated as [confidential], and that the Court order [Plaintiff] to produce clean copies of any such documents previously and improperly marked as 'confidential.'"  (Doc. 117, at 28.)

The Court hopes its discussion of the documents enumerated herein will provide additional guidance to Plaintiff regarding the appropriateness of confidential designations pursuant to the Protective Order in place.  The Court will not, however, order Plaintiff to engage in a wholesale review of all documents

previously marked as confidential in this case and make a revised determination as to the appropriateness of each specific confidential designation.  To do so would invite disagreement between the parties as to hundreds of documents that may never need to be filed with the Court or seen by anyone other than counsel and the parties.  Counsel are, however, instructed to meet and confer, as necessary, regarding any disagreements in the future about previously designated document(s) that counsel intends to use as an exhibit in this case.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Compel (Doc. 116) is **GRANTED in part** and **DENIED in part** as more fully set forth herein.  Supplemental responses shall be served on or before **March 16, 2017**.

**IT IS SO ORDERED**.

Dated at Wichita, Kansas, on this 16th day of February, 2017.

> S/ KENNETH G. GALE
> KENNETH G. GALE
> United States Magistrate Judge

24