IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

PROGRESSIVE NORTHWESTERN
INSURANCE COMPANY,

    **Plaintiff,**

v.

GABRIEL GANT, INDIVIDUALLY
AND AS HEIR AT LAW OF KATHRYN
GANT, AND GABRIEL GANT, AS
ADMINISTRATOR OF THE ESTATE OF
KATHRYN GRANT, DECEASED, AND
GABRIEL GANT, AS NEXT FRIEND OF
M.G., F.G., AND C.G.,

    **Defendants.**

Case No. 15-9267-JAR-KGG

## MEMORANDUM AND ORDER

Plaintiff Progressive Northwestern Insurance Company ("Progressive") filed this declaratory judgment action seeking a declaration of its rights and obligations under an insurance policy issued to Edward and Linda Birk. This matter is before the Court on Progressive's Motion to Dismiss Defendant Gabriel Gant's Amended Counterclaim (Doc. 121). For the reasons explained in detail below, the Court denies Progressive's motion with respect to the breach of contract counterclaim, and grants the motion with respect to the individual tort counterclaims.

**I.    Background**

The following facts are drawn from Defendant Gant's Amended Counterclaim; the well pleaded facts alleged therein are assumed to be true, as required on a motion to dismiss under Fed. R. Civ. P. 12(b)(6).[1] This case arises out of a fatality vehicle collision that occurred in June

---

[1] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

2011. Justin Birk and Katie Gant were involved in a head-on collision on a rural Coffey County road; Mrs. Gant died of her injuries at the scene of the accident. Defendant Gabriel Gant ("Gant") filed a wrongful death lawsuit on behalf of his wife against Justin Birk; his parents, Edward and Linda Birk; and the family company, Birk Oil Company (collectively, "the Birk Defendants").

The Birk Defendants were insured by Progressive, which hired attorney Kevin M. McMaster to investigate claims arising from the fatality collision and to represent its insureds in a potential lawsuit. The underlying case (the "Birk Lawsuit") was highly contested and spanned several years. As a result of McMaster's actions and inactions throughout the Birk Lawsuit, the court entered sanctions against the Birk Defendants, including (1) deeming over 500 Requests for Admission admitted as a result of failure to respond; (2) finding an alter-ego relationship between Edward and Linda Birk and Birk Oil Company; and (3) striking the only comparative fault expert on behalf of the Birk Defendants. Additionally, both before and during the Birk Lawsuit, Progressive and McMaster affirmatively misrepresented the existence of additional insurance available through another carrier, which prevented an early settlement.

Before trial, the Birk Defendants entered into the Agreement and Assignment of Rights (the "Agreement"), assigning to Gant any rights they had against Progressive in exchange for Gant's covenant not to execute against the personal assets of the Birk Defendants. The parties agreed to a contested bench trial before Judge Goddrez, and the case went to trial in June 2015. The court granted judgment in favor of Gant in the amount of $6,723,021; all of the Birk Defendants were liable for some or all of the judgment. The court apportioned no fault to Katie Gant. Pursuant to the Agreement, the judgment amount was partially satisfied with certain insurance proceeds. An unpaid balance of the judgment remains in the amount of $5,473,021,

plus $7,114.42 in costs and post-judgment interest that continues to accrue.

On September 15, 2015, Progressive filed this action for declaratory judgment, requesting this Court to find that "its handling of the underlying claim and lawsuit was appropriate, in good faith, and consistent with the Progressive Policy and all duties imposed upon it by law or otherwise." Progressive seeks a declaration that it is not liable to Gant for damages in excess of its policy limits. Gant, as assignee of the Birk Defendants' rights against Progressive, filed an Answer and Counterclaim asserting eight causes of action: (1) Assignment; (2) Vicarious Liability; (3) Breach of Contract; (4) Breach of Duty of Good Faith; (5) Negligence; (6) Negligent Misrepresentation; (7) Fraudulent Misrepresentation; and (8) Fraud Through Silence.[2] This Court granted Progressive's Motion to Dismiss Counts 1, 2, and 4 of the Counterclaim for failure to state a claim; the remaining counts were dismissed without prejudice to amend.[3]

Gant filed an Amended Counterclaim on September 9, 2016, asserting four causes of action: (1) Breach of Contract; (2) Negligent Misrepresentation; (3) Fraudulent Misrepresentation; and (4) Fraud Through Silence.[4] In addition to the unpaid balance of the judgment and costs of the Birk Lawsuit, Gant seeks interest, lost profits, and attorney's fees. This motion to dismiss followed.

**II.  Discussion**

Progressive moves for dismissal of all counts in the Amended Counterclaim under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. In order to pass muster under Rule 12(b)(6), "the complaint must give the court reason to believe that *this*

---

[2]Counterclaim, Doc. 18.
[3]Doc. 93.
[4]Doc. 105.

3

plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[5] The plausibility standard does not require a showing of probability that a defendant has acted unlawfully, but requires more than "a sheer possibility."[6] "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."[7] Finally, the Court must accept the nonmoving party's factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[8]

The Supreme Court has explained the analysis as a two-step process. For the purposes of a motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but] we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"[9] Thus, the court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[10] Second, the court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[11] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[12]

---

[5]*Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[6]*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[7]*Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

[8]*Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[9]*Id.*

[10]*Id.* at 679.

[11]*Id.*

[12]*Id.* at 678.

Fed. R. Civ. P. 9(b) states, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." The Tenth Circuit has held that a complaint alleging fraud must "set forth the time, place, and contents of the false representation, the identity of the party making the false statements, and the consequences thereof."[13] At a minimum, this requires that a plaintiff set forth the "who, what, when, where, and how of the alleged fraud."[14]

Finally, if the court on a Rule 12(b)(6) motion looks to matters that were not attached to the complaint or incorporated into the complaint by reference, it generally must convert the motion to a Rule 56 motion for summary judgment.[15] However, the court may consider documents that are referred to in the complaint if they are central to the plaintiff's claim and the parties do not dispute their authenticity.[16] Here, the Court will consider the documents Gant refers to in the Amended Counterclaim, which Progressive attaches to its motion to dismiss.[17]

**A. Count 1: Breach of Contract**

Under long-standing Kansas law, an action to address an insurer's alleged breach of the duty to act in good faith in defending and settling a claim against its insured sounds in breach of contract.[18] The elements of a breach of contract claim are: (1) the existence of a contract between the parties; (2) sufficient consideration to support the contract; (3) the plaintiff's

---

[13]*Koch v. Koch Indus., Inc.,* 203 F.3d 1202, 1236 (10th Cir. 2000).

[14]*United States ex rel. Sikkenga v. Regence Bluecross Blueshield,* 472 F.3d 702, 726–27 (10th Cir. 2006).

[15]Fed. R. Civ. P. 12(d); *GFF Corp. v. Associated Wholesale Grocers,* 130 F.3d 1381, 1384–85 (10th Cir. 1997).

[16]*See Alvarado v. KOB-TV, LLC,* 493 F.3d 1210, 1215 (10th Cir. 2007); *GFF Corp.,* 130 F.3d at 1384–85.

[17]Doc. 121, Exs. A through L.

[18]*Moses v. Halstead*, 581 F.3d 1248, 1251 (10th Cir. 2009) (citing *Glenn v. Fleming*, 799 P.3d 79, 90 (Kan. 1990)).

performance or willingness to perform in compliance with the contract; (4) the defendant's breach of the contract; and (5) damage to plaintiff caused by the breach.[19] Kansas has adopted "the principle that the insurer's duties are contractually based and then approved a tort standard of care for determining when the contract duty has been breached."[20]

"Inherent in virtually every contract—including an insurance policy—is the duty of all parties to perform their contractual obligations in good faith."[21] "In the context of a liability insurance contract, an insurer must exercise good faith in defending the lawsuit and in negotiations related to settlement."[22] The duty to exercise good faith includes "the duty to hire counsel that is competent to defend the allegations against its insured and to provide such counsel with adequate resources to competently defend the suit."[23]

Established Kansas law also holds that an insurance company's negligent or bad faith rejection of an injured party's offer to settle within the policy's limits constitutes a breach of its contract with the insured and gives rise to liability for any judgment in excess of the policy limits.[24] The same rule applies to instances in which the insurance company negligently or in bad faith delays in accepting an offer to settle within the policy's limits.[25] Further, "there must be a causal link between the insurer's conduct and the excess judgment against the insured."[26]

---

[19]PIK Civ. 4th 124.01-A.

[20]*Glenn*, 799 P.3d at 90.

[21]*Estate of Draper v. Bank of Am.*, 205 P.3d 698, 710 (Kan. 2009).

[22]*Hackman v. W. Agric. Ins. Co.*, 275 P.3d 73 (Table), 2012 WL 1524060, at *11 (Kan. Ct. App. Apr. 27, 2012).

[23]*Id.*

[24]*See Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 660 (10th Cir. 2007) (citing *Bollinger v. Nuss*, 449 P.2d 502, 508 (1969)).

[25]*See id.* at 667 (citing *Glenn*, 799 P.2d at 82).

[26]*Roberts v. Printup*, 595 F.3d 1181, 1187 (10th Cir. 2010) (quoting *Hawkins v. Dennis*, 905 P.2d 678, 690 (Kan. 1995) (citing *Snodgrass v. State Farm Mut. Auto Ins. Co.*, 804 P.2d 1012, 1021 (Kan. Ct. App. 1991)).

Here, Gant alleges Progressive breached its insurance policy contract and the duties arising therefrom both directly and through the actions of counsel McMaster. Count 1 is divided into four detailed subparts, alleging: (1) the existence of a contract, including the duty to defend the Birk Defendants and the assignment of rights to Gant; (2) Progressive is liable for actions of its agent, McMaster; (3) actions taken by McMaster and Progressive that demonstrate Progressive's bad faith and/or negligence; and (4) breach of the contract by Progressive caused damage to the Birk Defendants.

Progressive first contends that Gant's breach of contract claim fails as a matter of law because he has not alleged any damage to the Birk Defendants caused by a breach by Progressive/the alleged conduct of McMaster. In the fourth subpart, relevant to the motion to dismiss, Gant proffers a seven-page litany of actions by Progressive and McMaster that allegedly prejudiced the Birk Defendants, including, *inter alia*: Progressive's prior characterization of McMaster's actions as "highly prejudicial" and "to the extreme detriment of [the Birk] Defendants"; hiding and denying the existence of an additional policy, which prevented a settlement within policy limits and necessitated a lawsuit resulting in an excess judgment against the Birk Defendants;[27] failing to respond to hundreds of RFAs eliminated Justin Birk's defense and made it impossible for Linda and Edward Birk to defend against the claim of negligent entrustment;[28] disobeying court orders led to the striking of the Birk Defendant's only expert witness, who was to testify about Katie Gant's alleged cellphone use, and thereby eliminated the chance for the Birk Defendants to attribute fault to Ms. Gant at trial;[29] and making misrepresentations and defying court orders, resulting in sanctions deeming the Birk parents and

---

[27] Amended Counterclaim, Doc. 105 ¶ 772(a), (f).

[28] *Id.* ¶ 772(c).

[29] *Id.* ¶ 772(b).

Birk Oil Company to be alter egos, increasing significantly the personal liability assigned to each by the finder of fact.[30] Progressive argues that the Amended Counterclaim does not allege that these actions resulted in the imposition of sanctions, impacted the resulting Judgment, or otherwise inflated amounts recoverable from the Birks. The Court disagrees.

The Amended Counterclaim alleges that, as a result of McMaster's conduct, the district court took certain actions that impacted the trial and caused damage to the Birk Defendants, including: (1) the admitted RFAs were introduced as evidence at trial, and were fundamental in establishing the negligent entrustment claims asserted against Edward and Linda Birk, resulting in the court ultimately apportioning 25% liability to Linda and Edward Birk, which resulted in a total negligent entrustment liability award of $1.6 million;[31] (2) the sanction of striking the Birk Defendants' expert on the issue of comparative fault resulted in a loss of any opportunity for the Birk Defendants to reduce or avoid liability, resulting in damages arising therefrom;[32] (3) the alter ego sanction imposed on Edward and Linda Birk resulted in the Birks becoming jointly and severally liable for the entire amount of the judgment, resulting in an additional $5 million of liability imposed on the Birks and $1.6 million on Birk Oil Company;[33] and (4) the misrepresentations regarding the existence of additional insurance policies prevented an early settlement of the case, which would have allowed the Birk Defendants to avoid the risk and hardship of a lawsuit, as well as trial and the excess verdict.[34]

Progressive further argues that even if Gant adequately alleges a causal connection, the Amended Complaint's vicarious liability theory is unsupported by Kansas law. The general rule

---

[30]*Id.* ¶ 772(d).

[31]*Id.* ¶ 772(c), (d), (i).

[32]*Id.* ¶ 772(b).

[33]*Id.* ¶¶ 670–73, 772(d).

[34]*Id.* ¶ 772(b).

in Kansas is that merely hiring an attorney to represent an insured will not make the insurer vicariously liable for the attorney's negligence.[35] Kansas also recognizes, however, that the attorney-client relationship is grounded in agency principles,[36] and that "an attorney hired by an insurer to represent an insured can be considered an agent of the insured, making the insurer vicariously liable for the attorney's actions—if, at the time in question, the attorney's acts or omissions were directed, commanded, or knowingly authorized by the insurer."[37] "When there are facts to demonstrate that the attorney violated these rules and allowed the insurer to direct or control the attorney's actions in defending the insured, the attorney likely will be considered the agent of the insured and, in turn, the insurer may be held vicariously liable for the attorney's negligent conduct."[38]

Progressive argues that Gant fails to allege that Progressive controlled McMaster's conduct in defending the Birk Defendants by exerting an "unusual and unethical level of control over McMaster such that Progressive—and not the Birks—was McMaster's client." The Court disagrees. The Amended Counterclaim alleges that in the Birk Lawsuit, McMaster was engaged in the furtherance of Progressive's business to such a degree that Progressive had the "right to direct and control" McMaster's activities.[39] The Amended Counterclaim goes on to allege that Progressive, in referring to McMaster, has admitted that "[t]he insurance company has the exclusive right to investigate the case, employ and control counsel employed to defend any suit,

---

[35]*Pac. Emp'rs Ins. Co. v. P.B. Hoidale Co., Inc.*, 789 F. Supp. 1117, 1122 (D. Kan. 1992) (citing *Bell v. Tilton*, 674 P.2d 468 (Kan. 1983)).

[36]*Id.* (citing *Prof'l Serv. Indus. v. Kimbrell,* 758 F. Supp. 676, 681 (D. Kan. 1991)).

[37]*Hackman v. W. Agr. Ins. Co.,* 275 P.3d 73 (Table), 2012 WL 1524060, at *16 (citing *Hoidale*, 789 F. Supp. at 1122; *see Bell v. Tilton,* 674 P.2d 468, 472 (Kan. 1983) ("The mere fact an insurance company retains an attorney to represent an insured against a lawsuit does not mean the attorney is also the insurance company's attorney capable of binding the insurance company.").

[38]*Id.* (citing *Bell*, 674 P.2d at 472).

[39]Doc. 104 ¶ 751.

take full control over the litigation" and that the "insurer holds the exclusive right to 'employ and control' counsel."[40] And, as Gant notes, the Amended Counterclaim sets forth more than forty fact-specific examples of what he characterizes as Progressive's right to control McMaster, its directing and/or authorization of his actions, and its ratification of his conduct.[41]

Finally, Progressive's brief argument that any claim based on McMaster's conduct is actually a legal malpractice claim and thus unassignable is without merit. McMaster is not a defendant, nor has Gant asserted a legal malpractice claim against him. As *Hoidale* and its progeny recognize, a cause of action exists for a breach of contract where an insurance company defends a case with negligence or bad faith, and the insurance company may be vicariously liable for the actions of the attorney defending the case.

Accordingly, accepting as true all well-pleaded facts as it must, the Court finds the Amended Counterclaim sets forth a plausible breach of contract claim sufficient to withstand Progressive's motion to dismiss.

### B. Counts 2, 3, and 4: Independent Tort Claims

As previously discussed, this cause of action arises out of an Agreement to assign the Birk Defendants' rights against Progressive to Gant. Gant's tort claims in his original Counterclaim were dismissed without prejudice, as they were brought pursuant to his rights under the Agreement.[42] In his Amended Counterclaim, Gant asserts Count 2 (Negligent Misrepresentation), Count 3 (Fraudulent Misrepresentation), and Count 4 (Fraud Through Silence) as individual tort claims that are independent of his breach of contract claim, with alleged damages independent of those suffered by the Birk Defendants. Progressive moves to

---

[40]*Id.* ¶¶ 717–20, 753.

[41]*Id.* ¶¶ 755–60.

[42]*Bolz v. State Farm Mut. Auto Ins. Co.*, 52 P.3d 898, 901 (Kan. 2002) (collecting cases and explaining it is axiomatic that claims sounding in tort are not assignable under Kansas law).

dismiss these claims as barred under the applicable statute of limitations or, alternatively, for failure to state a claim.

1. **Statute of Limitations**

Progressive argues that Gant's negligent misrepresentation, fraudulent misrepresentation, and fraud by silence claims are barred under the applicable two-year statute of limitations. The parties agree that Kansas law has a two-year statute of limitations for both fraud and negligence actions. Under K.S.A. 60-513(a)(3), a plaintiff must file his fraud claim within two years of discovering the fraud if the plaintiff suffered ascertainable injury at that time; if not, the plaintiff must file within two years of when substantial injury resulting from the fraud is reasonably ascertainable.[43] K.S.A. 60-513(a)(4) provides a similar two-year statute of limitations for claims of negligent misrepresentation. K.S.A. 60-513(b) contains a similar accrual determination tolling the period of limitation "until the fact of the injury becomes reasonably ascertainable to the injured party." The question before the Court is whether Gant should have known of any fraud or negligent misrepresentation regarding the existence of the additional insurance policy more than two years before the filing of the Counterclaim on April 7, 2016.

The term "substantial injury" is not intended to imply that the plaintiff must have knowledge of the full extent of his injuries before the statute of limitations begins; rather, a plaintiff simply must have "sufficient ascertainable injury to justify an action for recovery of the damages."[44] Here, Progressive asserts that Gant should have known of the existence and availability of additional insurance coverage by February 26, 2014, the date supplemental discovery responses were served by McMaster, admitting that certain additional policies of

---

[43]K.S.A. 60-513(a)(3) (stating fraud has a two-year statute of limitations, "but the cause of action shall not be deemed to have accrued until the fraud is discovered").

[44]*Roe v. Diefendorf,* 689 P.2d 855, 859 (Kan. 1984).

liability insurance existed. Gant counters that the statute of limitations did not run until after an April 14, 2014 hearing where the district judge overruled McMaster's objection to Gant's Notices of Intent to serve third party subpoenas on various companies to obtain the insurance policies.

To determine when the statute began to run under the discovery rule, the Court must determine when Gant knew or should have discovered the material facts essential to his cause of action.[45] In determining the date on which an injury is reasonably ascertainable, a court must invoke an objective standard based on examination of all surrounding circumstances.[46] Kansas law does not require that a plaintiff have ironclad actual knowledge about his injury; rather, a plaintiff must have such notice as would permit him to discover the injury with the use of due diligence.[47] "Reasonably ascertainable" does not mean "actual knowledge."[48] "The critical information to trigger the running of the statute of limitations is knowledge of the fact of injury, not the extent of injury."[49]

Gant's three individual tort claims are each premised on the allegation that Progressive/McMaster failed to disclose the *existence* of other insurance policies to Gant, specifically the policy issued by BitCo, which afforded coverage and later paid an additional $1 million for the fatality collision. Gant claims he was damaged by this alleged negligence and fraud by filing and prosecuting the underlying lawsuit and incurring $95,348.50 in litigation expenses, as well as lost wages, lost paid time off, and mental and emotional suffering caused by

---

[45]*Dearborn Animal Clinic, P.A. v.Wilson*, 806 P.2d 997, 1002 (Kan. 1991).

[46]*Id.*

[47]*Id.*

[48]*Austin v. U.S. Bank, N.A.*, No. 03-4130-RDR, 2006 WL 980739, at *11 (D. Kan. Jan. 25, 2006) (quoting *KPERS v. Blackwell, Sanders, Matheny, Weary & Lombardi, L.C.*., 114 F.3d 679, 689 (8th Cir. 1997), *cert. denied*, 522 U.S. 1068 (1998) (applying Kansas law)).

[49]*Id.* (quoting *Brueck v. Krings*, 638 P.2d 904, 908 (Kan. 1982)).

the lawsuit itself. Gant asserts in the Amended Counterclaim that Progressive/McMaster, through both verbal and written communications, denied the existence of additional insurance policies until February 26, 2014, when the Birks, through McMaster, disclosed the existence of three BitCo policies and another issued by Allied.

Gant claims that because McMaster refused to produce those policies for review until after the April 14 court hearing, the statute of limitations did not begin to run until the policies were made available for review. In other words, Gant asserts that he did not become aware of the full extent of the fraud or misrepresentation until McMaster produced the policies for review. This is not the appropriate standard. "Kansas law clearly holds that the critical information to trigger the running of the statute of limitations is knowledge of the fact of injury, not the extent of injury."[50] The critical date in this case is February 26, 2014, when McMaster disclosed via supplemental discovery responses that additional policies of liability insurance existed. Indeed, when Gant learned of the existence of the policies on February 26, 2014, the underlying litigation had been pending nearly a year. Gant knew or should have known then that McMaster's previous representation that such policies did not exist were either fraudulent or negligent misrepresentations giving rise to a potential fraud or negligence claim against Progressive insofar as his "litigation" damages had resulted at that point. The disclosure in February 2014 was sufficient information that would lead a reasonable person to investigate, as Gant did when he moved for production of the policies. Because Gant filed his Counterclaim on April 7, 2016, outside the two-year period, his claims for fraudulent misrepresentation, negligent misrepresentation, and fraud by concealment are barred by the statute of limitations in K.S.A. 60-513.

---

[50]*Dusek-Higgins v. McComb*, 165 P.3d 320 (Table), 2007 WL 2410112, at *9 (Kan. Ct. App. 2007) (citing *Med James, Inc. v. Barnes*, 61 P.3d 86, 93 (Kan. Ct. App. 2003); *Brueck,* 638 P.2d at 908 (knowledge of negligence of accounting firm, but not extent of damages).

### 2. Failure to State a Claim

Even if Gant's claims were timely, the Court finds that his Amended Counterclaim fails to state a claim upon which relief can be granted.

### a. Fraudulent and/or Negligent Misrepresentation

The elements of fraudulent misrepresentation under Kansas law include "(1) an untrue statement of fact, (2) known to be untrue by the party making it, (3) made with the intent to deceive or recklessly made with disregard for the truth, where (4) another party justifiably relies on the statement, and (5) acts to his or her injury and damage."[51] To state a claim for negligent misrepresentation, a plaintiff must assert that: (1) the defendant made a false statement regarding a transaction in which he or she had a pecuniary interest; (2) the defendant failed to exercise reasonable care to ascertain or communicate the accuracy of the statement; (3) the plaintiff justifiably relied upon the statement; and (4) the plaintiff thereby incurred a loss.[52]

Gant asserts that Progressive relayed untrue statements of fact "that there were no insurance policies potentially providing coverage for the Fatality Collision,"[53] and that "there exists no other policies (auto, excess, or umbrella) affording coverage to this accident."[54] Gant further alleges that Progressive is responsible for similar statements made by McMaster.[55] Gant claims that these representations were "intentionally made for the purpose of inducing Gant to accept a quick settlement in a far greater amount than what was available and to permit

---

[51] *Paper, Allied Chem.& Energy Workers Int'l Union, Local 5-508, AFL-CIO v. Slurry Explosive Corp.*, 107 F. Supp. 2d 1311, 1328 (D. Kan. 2000) (citing *Gerhardt v. Harris*, 934 P.2d 976, 981 (Kan. 1997)).

[52] *Dill v. Barnett Funeral Home, Inc.*, 83 P.3d 1270 (Table), 2004 WL 292124, at *4–5 (Kan. Ct. App. 2004) (citing *Mahler v. Keenan Real Estate, Inc.*, 876 P.2d 609, 616 (Kan. 1994) (citing Restatement (Second) of Torts § 552)).

[53] Doc. 105 ¶ 794.

[54] *Id.* ¶ 795.

[55] *Id.* ¶ 796.

Progressive to avoid the cost and expense of litigation."[56] Nevertheless, Progressive argues, Gant fails to assert a plausible claim that he reasonably relied on any statement made by Progressive of McMaster about the existence of the Bitco policy.

The Court agrees that Gant fails to assert any facts demonstrating reliance. As noted by Progressive, Gant admits that his Amended Counterclaim asserts that he rejected Progressive's offer of its $250,000 policy limits, despite his own attorney's advice, in order to elicit a personal contribution from the Birks, not because he believed there were no additional policies. Gant does not allege any action that he affirmatively took in reliance on the alleged statements, nor does he allege any detriment as a result of such reliance. Instead, he alleges that he did not accept Progressive's policy limits and instead filed a lawsuit, pursued discovery seeking additional insurance coverage for Birk Oil, and obtained $1 million from another insurer. Accordingly, Gant fails to state a claim for fraudulent or negligent misrepresentation.

### b. Fraud by Silence

To establish fraud by silence under Kansas law, Gant must show the following elements: (1) Progressive had knowledge of material facts that Gant did not and that could not have discovered by the exercise of reasonable diligence; (2) Progressive was under an obligation to communicate the relevant facts to Gant; (3) Progressive intentionally failed to communicate the material facts to Gant; (4) Gant justifiably relied on Progressive to communicate the material facts; and (5) Gant sustained damages as a result of Progressive's failure to communicate the material facts to Gant.[57]

---

[56]*Id.* ¶ 804.

[57]*Wood v. LP Conversions, Inc.*, No. 14-2228-CM, 2016 WL 715772, at *7 (D. Kan. Feb. 22, 2016) (citing *Stechschulte v. Jennings*, 298 P.3d 1083, 1097 (Kan. 2013)); *see also* PIK Civ. 4th 142.41.

Gant fails to assert facts to support the second element of his claim, the obligation to communicate information. In the context of a fraud by silence claim, the duty to speak arises in two situations: "(1) a contracting party who has superior knowledge or knowledge that is not within the reasonable reach of the other party, has a legal duty to disclose information material to the bargain; and (2) parties in a fiduciary relationship must disclose material information to one another."[58] "Whether or not a contractual or fiduciary duty to disclose exists is determined by the facts and circumstances of each individual case."[59] In this case, Gant does not allege that such knowledge or relationship existed between Progressive and Gant: there is no allegation that Progressive or McMaster were involved in a contractual relationship with Gant or that a fiduciary relationship existed. Accordingly, Gant fails to state a claim for fraud by silence.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Motion to Dismiss Amended Counterclaim (Doc. 121) is GRANTED with respect to the individual fraud counterclaims set forth in Counts 2, 3, and 4; and DENIED with respect to the breach of contract counterclaim set forth in Count 1.

**IT IS SO ORDERED.**

Dated: July 11, 2017

                                         S/ Julie A. Robinson
                                         JULIE A. ROBINSON
                                         UNITED STATES DISTRICT JUDGE

---

[58]*DuShane v. Union Nat'l Bank,* 576 P.2d 674, 679 (Kan. 1978); *Dennison St. Bank v. Madeira,* 640 P.2d 1235, 1241–42 (Kan. 1982).

[59]*Plastic Packaging Corp. v. Sun Chem. Corp.,* 136 F. Supp. 2d 1201, 1205 (D. Kan. 2001) (citation omitted).