IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

PROGRESSIVE NORTHWESTERN )
INSURANCE COMPANY, )
 )
    Plaintiff/Counterclaim Defendant, )
 )
v. ) Case No.15-9267-JAR/KGG
 )
GABRIEL GANT, *et al.*, )
 )
    Defendants/Counterclaim Plaintiffs. )
_____)

## ORDER ON PLAINTIFF'S MOTION TO COMPEL

Now before the Court is Plaintiff's Motion to Compel. (Doc. 214.) For the reasons set forth below, Plaintiff's motion is **GRANTED in part** and **DENIED in part**.

## BACKGROUND

This is a declaratory judgment action brought by Plaintiff Progressive Northwestern Insurance Company ("Plaintiff" or "Progressive") resulting from a head-on vehicle accident between Justin Birk and Katie Gant that resulted in Ms. Gant's death. Plaintiff requests a finding that its handling of an underlying claim and lawsuit, resulting from a fatal automobile accident, "was appropriate, in good faith, and consistent with the Progressive Policy and all duties imposed upon it by law or otherwise." (*See* Doc. 1, at 5; Doc. 14, at 7.) Issues with the handling relate

specifically to counsel (Kevin McMaster) retained by Plaintiff for its insured, who were defendants in the underlying action. McMaster is alleged to have engaged in conduct described as "obstructionist," "highly prejudicial," and "to the extreme detriment" of the defendants in the underlying lawsuit. (*See generally* Doc. 6-5.)

Additional facts relating to this case, as well as to the underlying lawsuit, were summarized in the District Court's Memorandum and Order granting Defendants leave to answer out of time, Plaintiff's motion to strike, and Plaintiff's motion to dismiss. (*See* Doc. 92, at 1-3.) That summary, which accepted as true the well-pleaded facts from Gant's Counterclaim, is excerpted in relevant part:

> The Birk Defendants were insured by Progressive, which hired attorney Kevin M. McMaster to investigate claims arising from the Fatality Collision and to represent its insureds in a potential lawsuit. The underlying case (the "Birk Lawsuit") was highly contested and spanned several years. As a result of McMaster's actions and inactions throughout the Birk Lawsuit, the court entered sanctions against the Birk Defendants, including (1) deeming over 500 Requests for Admission admitted as a result of failure to respond; (2) finding an alter-ego relationship between Edward and Linda Birk and Birk Oil Company; and (3) striking the only comparative fault expert on behalf of the Birk Defendants. Additionally, both before and during the Birk Lawsuit, Progressive and McMaster affirmatively misrepresented the existence of additional insurance available through another carrier, which prevented an early settlement.
> Before trial, the Birk Defendants entered into the Agreement and Assignment of Rights (the 'Agreement'), assigning to Gant any rights they had against Progressive

> in exchange for Gant's covenant not to execute against the personal assets of the Birk Defendants. The parties agreed to a contested bench trial before Judge Goddrez, and the case went to trial in June 2015. The court granted judgment in favor of Gant in the amount of $6,723,021; all of the Birk Defendants were liable for some or all of the judgment. The court apportioned no fault to Katie Gant. Pursuant to the Agreement, the judgment amount was partially satisfied with certain insurance proceeds. An unpaid balance of the judgment remains in the amount of $5,473,021, plus $7,114.42 in costs and post-judgment interest that continues to accrue.
>
> On September 15, 2015, Progressive filed this action for declaratory judgment, requesting this Court to find that 'its handling of the underlying claim and lawsuit was appropriate, in good faith, and consistent with the Progressive Policy and all duties imposed upon it by law or otherwise.' Progressive sought a declaration that it is not liable to Gant for damages in excess of its policy limits. Gant, as assignee of the Birk Defendants' rights against Progressive, filed an Answer and Counterclaim asserting eight causes of action: 1) Assignment; 2) Vicarious Liability; 3) Breach of Contract; 4) Breach of Duty of Good Faith; 5) Negligence; 6) Negligent Misrepresentation; 7) Fraudulent Misrepresentation; and 8) Fraud Through Silence. In addition to the unpaid balance of the judgment and costs of the Birk Lawsuit, Gant seeks interest, lost profits, and attorney's fees.

(Doc. 92, at 2-3.)

The present motion relates to various of Gant's responses to Progressive's First Requests for Admission, Second Requests for Production, and Second Interrogatories that generally relate to Gant's awareness of the existence of other insurance policies. (*See* Doc. 215; *see also* Doc. 215-1, 215-2, 215-3.)

3

Progressive contends that the discovery requests at issue seek "information and documentation concerning efforts to investigate the existence of insurance coverage for the Birks and/or Birk Oil performed by Gant's counsel, prior to filing the underlying Gant v. Birk wrongful death suit against the Birks and Birk Oil." (Doc. 215, at 5-6.) Progressive has summarized the allegations in Gant's Counterclaim relating to the existence of other insurance policies as follows:

> In the Amended Counterclaim, Gant brings claims on his own behalf as well as claims as assignee of the Birks. Gant's own claims are premised basically entirely on the allegation that the Birks' defense attorney Kevin McMaster, and/or Progressive itself, untimely disclosed the Bitco policy, thereby allegedly subjecting Gant to allegedly extraneous litigation. Gant's claim presented as assignee of the Birks is the primary claim in this action, and is in essence a "bad faith" claim against Progressive for alleged breaches of various duties it owed to the Birks centered on Progressive's hiring of Kevin McMaster to represent them. The Birks' bad faith claim, asserted by Gant, is also substantially premised upon the alleged untimely disclosure of the Bitco policy by McMaster and/or Progressive. The thrust of Gant's putative claim is that, had the Bitco policy been disclosed earlier, then Gant could have submitted a claim to Bitco and Bitco would have tendered its $1 million liability limit earlier, obviating or circumscribing litigation.

(Doc. 215, at 4.)

## **DISCUSSION**

Fed.R.Civ.P. 26(b) states that

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at state in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

As such, the requested information must be nonprivileged, relevant, and proportionate to the needs of the case to be discoverable. Within this framework, the Court will review the contested discovery responses.

As stated above, Progressive contends that the discovery requests at issue seek "information and documentation concerning efforts to investigate the existence of insurance coverage for the Birks and/or Birk Oil performed by Gant's counsel, prior to filing the underlying Gant v. Birk wrongful death suit against the Birks and Birk Oil." (Doc. 215, at 5-6.) Progressive enumerates various categories of Requests for Admission for which it seeks supplemental responses: 1) whether Gant or his counsel "investigated the existence of other insurance" for Birk Oil prior to "April 2013 when the Underlying Action was filed" (Requests for Admission Nos. 5-8, 27-30); 2) whether Gant hired an "investigator to investigate the existence of other insurance which could provide coverage for the accident between June 2012 and April 2013" (RFA Nos. 25, 26); and 3) whether Gant or his

5

counsel searched public records to investigate the existence of Birk Oil insurance policies before February 26, 2014 ("the date the existence of the BitCo policy was disclosed by the Birks to Gant in supplemental discovery responses in the Underlying Action") (RFA Nos. 44-47). (*See* Doc. 215, at 6.)

Progressive's Second Requests for Production and Second Interrogatories correspond to these RFAs. (*See generally* Docs. 215-1, 215-2, 215-3.) Progressive moves the Court to compel supplemental responses to RFPs Nos. 1-3, which seek documents relied upon in answering the interrogatories and RFAs. (Doc. 215, at 6; Doc. 215-2, at 2.) Progressive also moves to compel Gant to provide a supplemental response to RFP No. 4, which requests "a privilege log compliant with District of Kansas requirements listing any documents or tangible materials concerning which Gant asserts attorney-client privilege or work product protection." (*Id.*) Finally, Progressive seeks a supplemental response to Interrogatory No. 1, "which requests factual bases in support of requests for admission which were not fully admitted, concerning the items discussed herein." (Doc. 215, at 7; Doc. 215-3.)

## A. Efforts to Investigate Insurance Coverage.

Progressive argues that "information and documentation concerning efforts by Gant's counsel to investigate the existence of other insurance which may

provide coverage for the underlying accident to the Birks or Birk Oil, is relevant and proportional to the needs of this case." (Doc. 215, at 7.) More specifically, Progressive contends that "Gant's claims against Progressive are substantially premised upon the alleged failure by Progressive and/or McMaster to timely disclose to Gant an insurance policy issued to Birk Oil by Bitco, another insurer." (*Id*.) Although Progressive disputes it had a duty to disclose what it contends was a "wholly unrelated" insurance policy (hereinafter "the Bitco policy"), it argues that "to the extent Gant premises his claims . . . on . . . [an] alleged failure to timely disclose" such a policy, "<u>what</u> Gant or his counsel knew (or should have known) about the existence of other insurance, and <u>when</u> Gant or his counsel knew (or should have known) about the existence of other insurance, is directly implicated in Gant's counterclaim." (*Id*., at 8.)

To establish the relevance of the requested information, Progressive provides the following analysis of Gant's allegations:

> In the Amended Counterclaim, Gant alleges that previous counsel received correspondence from McMaster in August 2011 which (a) tendered the Progressive $250,000 bodily injury liability limit, and (b) stated there were no other policies affording coverage for the accident. (*Id*. at ¶124) Gant alleges that previous counsel recommended to Gant that he accept Progressive's $250,000 offer. (*Id*. at ¶126) However, Gant alleges that, despite previous counsel's advice to accept Progressive's $250,000 policy limits offer, Gant

7

> instead rejected the $250,000 offer. (*Id.* at ¶126, also see Gant Answer to Progressive Declaratory Judgment Complaint, Doc. 104, ¶¶21, 28, 29, 30, 44) Gant alleges he then discharged previous counsel and hired the Wagstaff & Cartmell firm in June 2012. (Gant Am. Counterclaim, Doc. 104, ¶128). Gant, through the Wagstaff firm, filed the underlying Gant v. Birk lawsuit in April 2013, approximately ten (10) months after that firm was retained. In the Amended Counterclaim, Gant (as assignee of the Birks) alleges that the failure to timely disclose the Bitco policy that the Birks had purchased for Birk Oil caused the Birks harm by subjecting them to a lawsuit and excess judgment. (Am. Counterclaim, p. 43, ¶VIII)

(*Id.*, at 8-9.) Progressive asserts that the information is relevant because "[i]f Gant or his counsel actually knew about the Bitco policy, or had reason to know about [it], prior to suit or prior to the Birks' disclosure of the existence of the Bitco policy in February 2014, then this would undermine or vitiate Gant's claims premised upon untimely disclosure of the existence of the Bitco policy." (*Id.*, at 9.)

Given the nature of Gant's allegations and claims against Progressive, the Court finds that information on the general topic of Gant's awareness of, or efforts to determine, the existence of other insurance requested is relevant and proportional to the needs of the case. The Court will, however, address specific discovery requests, and objections thereto, below.

**B.** **Requests for Admission.**

### 1. Investigation of existence of other insurance.

Requests for Admission Nos. 5-8 and 27-30 all generally relate to Gant's efforts to investigate the existence of other insurance at various times prior to the filing of the underlying action in April 2013. (*See* Doc. 215-1, at 3-5, 14-15.) In response to Requests Nos. 5 and 7, which relates to actions taken by Gant himself, Gant objects to the use of the term "investigate." Without waiving the objection, Gant "admits in part and denies in part" Requests Nos. 5 and 7 "because Gant took steps to investigate the existence of other insurance by hiring counsel who communicated with Progressive and Progressive's retained counsel; however, Gant did not, personally, directly investigate the existence of insurance." (*Id.*, at 4, 5.) The Court **overrules** Gant's objections to Requests Nos. 5 and 7 but finds that the response, which provides a valid qualification of the admission as well as an adequate explanation of the partial denial, is appropriate pursuant to Fed.R.Civ.P. 36(a)(4). (*See* Doc. 225, at 11.) This finding also applies to Request Nos. 27 and 29, which incorporate Gant's responses to Requests Nos. 7 and 5, respectively. (*See* Doc. 215-1, at 14.)

Gant objects to Requests Nos. 6 and 8, which relate to actions taken by Gant's counsel to investigate the existence of other insurance between June 2012 and April 2013. (Doc. 215-1, at 4, 5.) Gant objects that Requests 6 and 8 are

"vague and ambiguous as to the terms 'investigate' and 'other insurance.'" (*Id.*) Gant's Counsel also objects to this Request "seeks information which is neither relevant nor proportional to the case" because "it improperly presumes that Gant and/or his Counsel had some duty to independently investigate insurance of an opposing party, particularly when that opposing party is represented by counsel." (*Id.*) The Court **overrules** these objections.

Gant also objects that these Requests seek information protected by the attorney-client privilege and work product doctrine. As stated above, Progressive argues that "to the extent Gant premises his claims . . . on . . . [an] alleged failure to timely disclose" such a policy, "<u>what</u> Gant or his counsel knew (or should have known) about the existence of other insurance, and <u>when</u> Gant or his counsel knew (or should have known) about the existence of other insurance, is directly implicated in Gant's counterclaim." (*Id.*, at 8.) The Court agrees with this assessment.

As an initial matter, what steps Gant's counsel did or did not take to determine the existence of other insurance is not protected by the attorney-client privilege. The privilege "protects disclosure of substantive communication between attorney and client, 'it does not protect disclosure of the underlying facts . . . .'" within that communication. Whether or not Gant's counsel investigated the

existence of insurance is a fact and thus not protected. No. 03-2200-JWL-DJW, 2006 WL 1867478, at *5 (D. Kan. July 1, 2006). The substance of any communication wherein counsel informed Gant as to the form or results of such investigation would, however, be protected.

As for the work product doctrine, that protection simply does not apply to these Requests for Admission. In order to constitute work product under Fed.R.Civ.P. 26(b)(3), "the material must be all of the following: 1. <u>Documents and tangible things</u>; 2. Prepared in anticipation of litigation or for trial; 3. Prepared by or for another party or by or for that other party's representative." ***Bohannan v. Honda Motor Co. Ltd.***, 127 F.R.D. 536, 538-39 (D. Kan. 1989) (emphasis added); *see also* Fed.R.Civ.P. 26(b)(3). Despite his arguments for the application of the work product doctrine, Gant's brief in opposition seemingly concedes that the protection applies only to documents and tangible things. (*See* Doc. 225, at 7-10.)

Gant's arguments for the application of work product protection to these Requests for Admission is misguided. The response to the Requests for Admission at issue – which seek a simple an admission or denial as to whether Gant's counsel did or did not investigate the existence of other insurance – does not constitute or implicate a document or tangible thing. Even assuming the information is protected by the work product doctrine, Progressive would be able to pierce the

immunity because it is material to the preparation of the case and Progressive would have no other avenue for obtaining this information. *Id.*; *see also Jacqueline McCoo v. Denny's Inc*., 192 F.R.D. 675, 684 (D. Kan. 2000).

Progressive's motion is **GRANTED** in regard to Requests for Admission Nos. 6 and 8. Gant is instructed to respond to Requests Nos. 6 and 8, without objection. Gant may, however, qualify and explain his answer as necessary pursuant to Fed.R.Civ.P. 36(a)(4). This finding also applies to Requests for Admission Nos. 28 and 30, which incorporate Gant's response to Request No. 6.

### 2. Private investigator.

Requests Nos. 25 and 26 ask whether Gant "hired an investigator to investigate other insurance which could provide coverage for the accident between June 2012 and April 2013." (Doc. 215-1, at 13.) Gant objected to these Requests as "overbroad, vague, ambiguous." (*Id.*) These objections are **overruled**.

Gant also objected that the requests sought irrelevant or disproportionate information because the Requests "improperly presume[s] that Gant and/or his Counsel had some duty to independently investigate insurance of an opposing party, particularly when that opposing party is represented by counsel." As discussed above, the information is neither irrelevant nor disproportionate. These objections are **overruled**.

In addition, Gant stated that "he retained attorneys to investigate and pursue his legal claims. Thus, it may be argued that Gant 'hired' individuals to conduct an 'investigation.' Gant did not personally, however, hire a private investigator." (*Id*.) The Court accepts this as a qualified admission of Requests Nos. 25 and 26, pursuant to Fed.R.Civ.P. 36(a)(4). Although the Court overrules the objections stated by Gant, Progressive's motion is, however, **DENIED** as to Gant's substantive response to Requests Nos. 25 and 26.

### 3. Public records searches.

Requests Nos. 44- 47 relate to whether Gant searched public records to investigate the existence of Birk Oil insurance policies before February 26, 2014 ("the date the existence of the BitCo policy was disclosed by the Birks to Gant in supplemental discovery responses in the Underlying Action") (RFA Nos. 44-47). (*See* Doc. 215, at 6; Doc. 215-1, at 20.) In response to Requests Nos. 44 and 46, Gant incorporates his response to Request No. 5, discussed *supra*, wherein the Court overrules Gant's objections to that Request.

Regardless of the validity of the objections lodged, Gant responds to Requests 44 and 46 that he "did not, personally, conduct a public records search." (Doc. 215-1, at 20.) The Court finds this to be a sufficient denial of Request No. 44 and a sufficient admission of Request No. 46. Plaintiff's motion is, thus,

13

**DENIED** as to Requests for Admission Nos. 44 and 46.

Requests Nos. 45 and 47 relate to whether or not Gant's counsel searched public records "to investigate the existence of insurance policies held by Birk Oil, prior to February 26, 2014." (Doc. 215-1, at 20.) In response, Gant incorporates his response to Request No. 6. The Court discussed Request for Admission No. 6, *supra*, **overruling** the objections and instructing Gant to respond to the Request without objection. The Court herein incorporates its analysis of Gant's objections to Request No. 6, *supra*, and **GRANTS** Progressive's motion as to Requests 45 and 47. Similarly, Gant is instructed to admit or deny whether his counsel conducted public records searches before February 26, 2014, to investigate the existence of insurance policies held by Birk Oil. Again, however, Gant may qualify and explain his answer as necessary pursuant to Fed.R.Civ.P. 36(a)(4).

**C.** **Requests For Production.**

Plaintiff also moves for supplemental responses to its Second Request for Production Nos. 1, 2, 3, and 4. RFP No. 1 asks Gant to produce "all documents referenced in your answers to Progressive's Second Interrogatories." (Doc. 215-2, at 2.) Request No. 2 seeks the documents reviewed or relied upon to respond to Progressive's Second Interrogatories, while Request No. 3 seeks such documents reviewed, referenced or relied upon to respond to Progressive's 81 Requests for

Admission.

Gant responds to Request No. 1 (which is incorporated by reference in response to Requests Nos. 2 and 3) by objecting that the Request is

> overbroad and unduly burdensome in that it seeks to obtain 'all documents' referenced in an Interrogatory that itself incorporates 81 Requests for Admission. However, as stated in response to Progressive's Second Interrogatories, the documents referenced therein already have been produced to Progressive by Gant and/or his counsel. In addition, Gant's Counsel refers Progressive to the following items which were referenced in Gant's responses and already are in Progressive's possession: (1) the documents produced by Bitco and the deposition transcript of Shelly Storey which otherwise have been made available to Progressive in this litigation and (2) the documents which Progressive has produced in this litigation.

(*Id*.) The Court finds Gant's objections to be valid given the all-encompassing nature of the Interrogatory – and corresponding 81 Requests for Admission – at issue (*see* Doc. 215-3, at 1). Even so, Gant has clearly stated that the responsive documents have been produced and/or are in Progressive's possession. (Doc. 215-2, at 2.) Should Progressive need to know which documents were referenced or relied upon regarding *particular* Requests for Admissions, it will need to submit more specific document requests. Progressive's motion is **DENIED** as to Requests for Production Nos. 1, 2, and 3.

Request No. 4 asks Gant to produce a privilege log "compliant with District

of Kansas requirements." (*Id.*)  Gant responded to the Request by incorporating his response to Request No. 1, and continues that

> these Requests seek documents reviewed, relied upon, and referenced in response to extensive discovery. As phrased, this Request therefore seeks the disclosure of materials protected by the attorney work product doctrine and/or the attorney client privilege. Therefore, Gant's Counsel objects to the same. Subject to and without waiving these objections, no documents were reviewed, relied upon, and/or referenced other than those that already have been produced to Progressive by Gant's Counsel and/or otherwise are in the possession of Progressive for the reasons set forth in response to Request No. 1.

(*Id.*)  Progressive argues that

> Gant has not submitted a privilege log or any description whatsoever what information or documentation is being withheld on the basis of attorney-client privilege or work product, and accordingly is depriving Progressive and this Court of critical and required information necessary to ascertain the propriety of the assertion of attorney-client privilege or work product protection.

(Doc. 215, at 12.)

Gant's response is wholly inappropriate.  Request No. 4 does not seek "the disclosure of materials protected by the attorney work product doctrine and/or the attorney client privilege."  The Request merely seeks a <u>privilege log</u> as to any such documents withheld from production on those bases.

As an initial matter, Progressive should not be required to submit such a

16

document request; Gant should have included a privilege log because his responses raise attorney/client privilege and attorney work product objections. A party withholding documents subject to assertion of privilege must submit a compliant privilege log pursuant to Fed.R.Civ.P. 26(b)(5)(A). "The objecting party must provide enough information in the privilege log to enable the withholding party, and the Court, to assess each element of the asserted privilege and determine its applicability." *Leftwich v. City of Pittsburg, Kansas*, No. 16-2112-JWL-GLR, 2017 WL 1338838, at *2 (D. Kan. April 12, 2017) (citations omitted)).

In his response brief, however, Gant states that "Progressive appears to ask this Court to have Gant produce a privilege log despite the fact that there simply were no documents to list on that privilege log." (Doc. 225, at 18.) If there are no documents to list on a privilege log, then Gant has no basis to have raised these objections. As such, the Court **overrules** Gant's work product and attorney-client privilege objections. This includes, but is not necessarily limited to, Gant's responses to Request for Production No. 4 and Requests for Admission Nos. 6, 8, 45, 47, and any other discovery responses that incorporate those responses.

D.  **Interrogatory No. 1.**

Finally, Progressive's Interrogatory No. 1 instructs Gant that if his response to

> any of Progressive's First Requests for Admissions is anything other than an unqualified admission, please describe all facts concerning and/or in support of each such response, identify all persons with knowledge of any facts concerning and/or in support of each such response, and identify all documents concerning or evincing the same.

(Doc. 215-3, at 1.) Gant objects to the Interrogatory as overbroad, unduly burdensome, and an "improper attempt to circumvent the limit of 35 Interrogatories" set forth in the Scheduling Order "by requesting a detailed recitation of 'all facts,' 'all persons,' and a narrative description relevant to 81 Requests for Admission." (*Id.*) The Court agrees and finds that Interrogatory 1

> is not a proper use of the request for admission discovery tool. A request for admission is meant to be answered with a simple admission or denial. FED.R.CIV.P. 36(a). Requiring the type of additional information sought [by the interrogatory at issue] is more akin to a response to a statement of fact in a dispositive motion. Also, as the Court has noted in prior cases, where the requests are an attempt to circumvent rules designed to limit the number of interrogatories or where the requests are contrary to the purposes of Rule 36, objections to those requests will be sustained.

*Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05-2164-MLB-DWB, 2007 WL 3171768, at *6 (D.Kan. Oct. 29, 2007) (citing *Audiotext Commc'ns Network, Inc. v. US Telecom, Inc.*, No. 94-2395-GTV, 1995 WL 625744, at *6 (D. Kan. Oct. 5, 1995). The Court thus **DENIES** Progressive's

motion as to Interrogatory No. 1.

Regardless, the Court agrees that Gant generally took particular care "in responding to Progressive's Requests for Admissions, attempting to provide explanation and details to Requests that were not responded to with unqualified admissions." (Doc. 225, at 15.) In conjunction with the supplemental Admission responses required by the Court herein, the Court agrees that Gant has sufficiently provided the factual detail requested by Progressive in regard to any qualified responses to Progressive's Requests for Admission.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Compel (Doc. 214) is **GRANTED in part** and **DENIED in part** as more fully set forth herein.

**IT IS SO ORDERED**.

Dated at Wichita, Kansas, on this 16th day of August, 2017.

S/ KENNETH G. GALE  
KENNETH G. GALE  
United States Magistrate Judge