# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

PROGRESSIVE NORTHWESTERN
INSURANCE COMPANY,

      Plaintiff/Counterclaim Defendant,

      v.

GABRIEL GANT,

      Defendant/Counterclaim Plaintiff.

Case No. 15-9267-JAR-KGG

## MEMORANDUM AND ORDER

Plaintiff Progressive Northwestern Insurance Company ("Progressive") filed this declaratory judgment action seeking a declaration that it fulfilled its contractual obligations in good faith and without negligence under an insurance policy issued to Edward and Linda Birk, whose son, Justin Birk, was involved in a vehicular homicide that killed Kathryn Gant in June 2011 (the "Fatality Collision"). Defendant Gabriel Gant, as assignee of the Birks' rights against Progressive, counterclaims for breach of contract/bad faith. The Court denied Gant's motion for partial summary judgment, granted in part Progressive's motion for summary judgment, and directed further briefing addressing why Gant's direct duty to defend claim should not be dismissed on summary judgment under Fed. R. Civ. P. 56(f)(2).[1] The parties have submitted their briefs (Docs. 295, 296) and the Court is prepared to rule. For the reasons explained below, the Court grants summary judgment to Progressive on this claim and denies without prejudice Gant's motion for reconsideration of its failure to settle claim.

---

[1]Doc. 294.

# I.    Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.[2]  In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[3]  "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the nonmoving party, is such that a reasonable jury could return a verdict for the nonmoving party."[4]  A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[5]  An issue of fact is "genuine" if "'the evidence is such that a reasonable jury could return a verdict for the non-moving party.'"[6]

The moving party initially must show the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[7]  In attempting to meet this standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim.[8]  Where the movant bears the burden of proof on a claim or defense, it must show that the undisputed facts establish every element of the claim entitling

---

[2]Fed. R. Civ. P. 56(a); *see also Grynberg v. Total*, 538 F.3d 1336, 1346 (10th Cir. 2008).

[3]*City of Harriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

[4]*Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[5]*Wright ex rel. Tr. Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[6]*Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[7]*Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[8]*Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler*, 144 F.3d at 671); *see also Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010).

it to judgment as a matter of law.[9]

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[10]  The nonmoving party may not simply rest upon its pleadings to satisfy its burden.[11]  Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[12]

The facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein."[13]  Rule 56(c)(4) provides that opposing affidavits must be made on personal knowledge and shall set forth such facts as would be admissible in evidence.[14] The non-moving party cannot avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation.[15]

Finally, summary judgment is not a "disfavored procedural shortcut;" on the contrary, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[16]  In responding to a motion for summary judgment, "a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the

---

[9]*Celotex*, 477 U.S. at 331.

[10]*Anderson*, 477 U.S. at 256; *Celotex*, 477 U.S. at 324; *Spaulding*, 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

[11]*Anderson*, 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir. 2001).

[12]*Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197–98 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 671); *see Kannady*, 590 F.3d at 1169.

[13]*Adams*, 233 F.3d at 1246.

[14]Fed. R. Civ. P. 56(c)(4).

[15]*Id.*; *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) (citation omitted).

[16]*Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

mere hope that something will turn up at trial."[17]

## II.    Discussion

The Court assumes the reader is familiar with the Memorandum and Order that precipitates the matter before the Court, which is incorporated by reference herein (the "Order").[18]  The Court will not restate the underlying facts in detail, but will provide excerpts from the Order as needed to frame its discussion of the matter presently before it.

Under Kansas law, "[a]n insurance company may become liable for an amount in excess of its policy limits if it fails to act in good faith and without negligence when defending and settling claims against insureds."[19]  Progressive seeks a declaration that it fulfilled its contractual duties to the insureds, the Birks, in good faith and without negligence.  Gant, as the assignee of Edward Birk, Linda Birk, Justin Birk, and Birk Oil (collectively "the Birk Defendants"), alleges Progressive breached its insurance policy contract with the Birks and the duties arising therefrom—both directly and through the actions of retained independent counsel Kevin McMaster—and seeks to collect the balance of the $6,723,021 judgment against the Birk Defendants.  Gant asserts both failure to defend and failure to settle theories of liability to support his assigned claims of bad faith/breach of contract against Progressive.

The Court previously granted Progressive summary judgment on Gant's claim that Progressive should be held vicariously liable for McMaster's conduct as a matter of law.[20]  Gant also claims that Progressive is directly liable to the Birks because it affirmatively engaged in

---

[17]*Conaway v. Smith,* 853 F.2d 789, 794 (10th Cir. 1988).

[18]Doc. 294.

[19]*Glenn v. Fleming*, 799 P.2d 79, 85 (Kan. 1990).

[20]Doc. 294 at 45–57.  The Court also rejected Gant's attempt to expand Kansas law concerning an insurer's failure to settle based on its failure to settle the claim for an amount within another insurer's policy limit. *Id.* at 61–64.

conduct constituting a breach of its duty to provide a defense to its insureds. Because Progressive did not move for summary judgment on this claim, however, the Court gave notice under Fed. R. Civ. P. 56(f)(2) and directed further briefing on Gant's direct liability and negligent supervision/failure to supervise claim.[21]

The limited question presently before the Court is what is required to satisfy Progressive's duty to defend its insureds. In resolving this issue, it is well settled that this Court must attempt to ascertain and apply state law, which in this case is the law of Kansas.[22] The Court must look to the rulings of the state's highest court and, where no controlling state decision exists, the Court must endeavor to predict how the state's highest court would rule.[23] The Court should consider analogous decisions by the state supreme court, decisions of lower courts in the state, decisions of federal and other state courts, and the general weight and trend of authority.[24] Ultimately, the Court's task is to predict what decision the Kansas Supreme Court would make if faced with the same facts and issue.[25]

Under Kansas law, an insurance company has a duty to defend its insured whenever the underlying facts suggest even a remote possibility of coverage.[26] As in this case, where there is

---

[21]*Id.* at 60–61.

[22]*Wade v. Emasco Ins. Co.*, 483 F.3d 657, 665 (10th Cir. 2007).

[23]*Id.*

[24]*MidAmerica Constr. Mgmt., Inc. v. MasTec. N. Am., Inc.*, 463 F.3d 1257, 1262 (10th Cir. 2006).

[25]*Oliveros v. Mitchell*, 449 F.3d 1091, 1093 (10th Cir. 2006).

[26]*Patrons Mut. Ins. Ass'n v. Harmon*, 732 P.2d 741, 744 (Kan. 1987); *Southgate State Bank & Trust Co. v. United Pac. Ins. Co.*, 588 P.2d 486, 488 (Kan. Ct. App. 1979), *rev. denied* 226 Kan. 793 (1979) (citing *Spruill Motors, Inc. v. Universal Underwriters Ins. Co.*, 512 P.2d 403, 407 (Kan. 1973)).

potential excess exposure to an insured, the insurer has a duty to provide independent counsel whose legal responsibility is to the insured.[27]

Gant contends that Progressive violated its obligation to defend the Birk Defendants by breaching several specific duties falling under the good faith umbrella: 1) duty to hire competent counsel; 2) duty to communicate; and 3) duty to investigate/discover other insurance policies. The Court addresses each argument in turn.

### A.      Duty to Hire Competent Counsel

Although the Kansas Supreme Court has not addressed the question, the Kansas Court of Appeals has explained that "[i]nherent within the duty to exercise good faith in hiring independent counsel is the duty to hire counsel that is competent to defend the allegations against its insured and to provide counsel with adequate resources to competently defend the lawsuit."[28] While the parties do not dispute that this is the general standard, they do dispute the application and scope of the term "competence."  Progressive argues that it satisfied its duty by hiring McMaster, a highly experienced defense attorney with specific experience in cases involving the same type of allegations present in the underlying wrongful death state court lawsuit (the "Birk Lawsuit"), and providing him with adequate resources to defend the Birk Defendants.  Gant argues that Progressive breached its duty to provide a competent defense because it 1) created a conflict of interest by hiring only one attorney, and 2) hired McMaster despite his negative history with respect to the settlement of cases.

---

[27]*Patrons*, 732 P.3d at 745; *Aselco, Inc. v. Hartford Ins. Group*, 231 P.3d 1011, 1020 (Kan. Ct. App. 2001).

[28]*Hackman v. W. Agr. Ins. Co.*, 275 P.3d 73 (Table), 2012 WL 1524060, at *11 (Kan. Ct. App. Apr. 27, 2012).

### 1. Conflict of Interest

Gant claims that Progressive failed to appreciate a conflict of interest and provide separate counsel for each of the Birk Defendants. On June 23, 2011, Progressive retained McMaster to represent Justin Birk. After the Birk Lawsuit was filed, McMaster's representation ultimately expanded to include Edward and Linda Birk and Birk Oil, at which time he obtained a written conflict waiver.[29] The waiver is dated May 10, 2013, and states as follows:

> This will confirm that we have spoken to you and your personal counsel regarding representing you individually and collectively in connection with the above referenced matter. We have reviewed and discussed the facts and circumstances surrounding the accident together with all the claims being presented and determined that there currently exists no conflict which would prohibit us from representing you individually and collectively.
>
> Consistent with our discussions there is a possibility that a conflict could arise in the future. All your questions regarding the potential of a conflict have been discussed and answered and it is our understanding that you have agreed to waive any potential conflict and you have no objection to the undersign's [sic] representation of you individually and collectively. You are also aware that if an unforeseen and unexpected conflict where [sic] to arise during our representation you will have the right to review this waiver of conflict.[30]

The waiver was signed by the individual Birk Defendants and by Edward Birk as President of Birk Oil.[31] The waiver was faxed to Progressive from the office of the Birks' personal counsel.[32]

In November 2014, the trial court entered the so-called alter-ego sanction, whereby it found Birk Oil to be the alter ego of Edward and Linda Birk, and thus Birk Oil would be jointly

---

[29]Doc. 267, Ex. F at 54:22–55:6; 55:7–13; 112:13–25; Ex. JJ.

[30]*Id.* Ex. JJ.

[31]*Id.*

[32]*Id.*

liable with Edward and Linda Birk on any negligent entrustment judgment.[33]  Birk Oil then hired

attorney Steven Pigg to represent its interests in addition to McMaster, and Progressive

ultimately agreed to pay for Pigg's representation of Birk Oil.  In January 2015, McMaster

notified Progressive of the alter-ego sanction and as detailed in the Court's previous Order,

Progressive hired additional counsel to represent the Birk Defendants and terminated

McMaster.[34]

Gant argues that the conflict among the Birk Defendants should have been "readily

apparent" to Progressive and that its failure to appoint independent counsel for the each Birk

Defendant constitutes a breach of its duty to defend.  Generally, Kansas holds that an insurer's

duty to act in good faith in defending and settling a claim against its insured is contractually

based, but that a tort standard of care is used to determine when the contract duty has been

breached.[35]  Even assuming that McMaster's representation of all four Birk Defendants in the

underlying litigation created a conflict of interest, Gant points to no authority in Kansas law

suggesting that an insurer's duty to defend requires an insurer to independently identify conflicts

and take steps to address them prior to or contemporaneously with appointment of independent

counsel.  There is no evidence of an apparent or actual conflict when McMaster was originally

hired, or that Progressive disregarded notice from McMaster of a conflict.  In fact, the record

shows that Progressive took action to hire additional independent counsel upon learning of the

alter-ego sanction and the resulting conflict of interest in January and February 2015.

Accordingly, any liability imposed on Progressive for McMaster's purported failure to recognize

---

[33]*Id.* Ex. UU.

[34]Doc. 294 at 17–19.

[35]*Glenn v. Fleming*, 799 P.3d 79, 90 (Kan. 1990).

any conflict of interest would be vicarious, which this Court has previously rejected.[36] The Court thus predicts that the Kansas Supreme Court would not extend an insurer's duty to determine a conflict of interests prior to or at the same time as it appoints legal counsel.

Moreover, even assuming that Progressive had a duty to prevent the conflict and breached that duty, Gant has provided insufficient evidence linking the excess policy judgment against the Birk Defendants to that breach. Instead, Gant continues to urge that, had Progressive hired different or additional counsel, Bituminous Casualty Insurance Company ("Bitco"), which issued a $1million Commercial Automobile Policy to Birk Oil, would have been placed on notice earlier, Bitco would have offered its $1 million Policy limit, and Gant would have accepted that offer. As Progressive points out, however, this argument conflates Progressive's duty to defend with its duty to engage in settlement negotiations in good faith. Because this Court previously held that Progressive has no duty to discover other insurance policies or tender claims to other insurers, it follows that it had no duty or ability to compel retained independent counsel to do so.[37]

### 2. McMaster's Prior Conduct

Gant argues that McMaster was incompetent to defend the Birk Defendants in the underlying litigation because Progressive had prior knowledge of McMaster's reputation for "thwarting" settlements. Gant contends that McMaster's reputation as an obstreperous lawyer was well known, both before and during the Birk Lawsuit, and Progressive "knew what it was getting into with Mr. McMaster."[38] Prior to hiring McMaster in this case, Progressive received notice from several lawyers regarding his obstructionist tactics, in particular involving settlement

---

[36] Doc. 294 at 45–57.

[37] *Id.* at 63.

[38] Doc. 281 at 147.

matters.[39]  Gant characterizes McMaster's prior conduct as a "history of incompetence with regard to handling cases that required a focus on resolution without protracted, aggressive litigation," and that Progressive was "well aware" of that history.[40]  Gant argues that Progressive had extensive notice that McMaster lacked the core competencies needed by the Birk Defendants and that by retaining him with knowledge of these deficiencies, Progressive breached its duty to hire competent counsel for its insureds.

Although Gant points to no authority from the Kansas Supreme Court suggesting that an insurer's duty of reasonable care extends to choice of independent counsel, the Kansas Court of Appeals addressed the issue in *Hackman v. Western Agricultural Insurance Company*.[41]  In that case, the insured claimed that her insurer breached the duty to provide her a competent defense by failing to advise her that it had successfully sued independent counsel for malpractice, that it had removed counsel from its approved counsel list for several years as a result, and that counsel had been sanctioned for attorney misconduct in the past.[42]  The court found that even if these allegations regarding independent counsel's conduct were true, whether the information was communicated by the insurer to the insured was "immaterial to the issue of whether [the insurer] breached its duty to provide her a competent defense *in this case*."[43]

Likewise, the Court predicts the Kansas Supreme Court would agree that it is immaterial to this case whether Progressive had prior knowledge that opposing counsel in previous unrelated cases found McMaster aggressive or difficult to work with.  There is no evidence that

---

[39]Doc. 294 at 35–36.

[40]Doc. 295 at 16.

[41]275 P.3d 73 (Table), 2012 WL 1524060, at *12 (Kan. Ct. App. Apr. 27, 2012).

[42]*Id.* at *13.

[43]*Id.* (emphasis added).

Progressive's insureds in those cases sustained any excess exposure or that McMaster "thwarted" settlement in the underlying Birk Lawsuit. In fact, the record indicates that Progressive, through McMaster, promptly offered to settle for its Policy limit, which Gant rejected.[44] McMaster also communicated a second offer to settle for Progressive's Policy limit as well as an offer to purchase Gant's residence, which was also rejected. Nor does the record contain any facts from which it could be inferred that, other than the personal monetary sanctions assessed by the underlying trial court against McMaster,[45] Progressive was aware of specific sanctionable conduct occurring in the underlying Birk Lawsuit until February 2015, when it took action to retain additional counsel and ultimately terminate McMaster from the Birk Lawsuit and Progressive's panel of counsel.[46]

Moreover, even assuming Progressive breached its duty to provide competent counsel, Gant again fails to provide evidence linking the excess policy judgment against the Birk Defendants to that breach. Citing the Restatement of the Law of Liability Insurance § 12, Gant asserts that "[w]here an insurer hires an attorney despite a known problem, and then that same problem surfaces in the case for which the attorney was hired, the insurance company that hired the attorney is liable for the loss to the insureds by the hiring of that attorney."[47] Gant contends there is evidence that Progressive's hiring of McMaster damaged the Birk Defendants by preventing a settlement, thus precluding summary judgment. There are two flaws in Gant's argument.

---

[44]Doc. 267, Ex. ZZ.

[45]Doc.294 at 13–14.

[46]*Id.* at 14–19.

[47]Doc. 295 at 17.

First, Gant's reliance on the Restatement is premature. It appears that Final Draft No. 2 of the Restatement was approved by the members of the American Law Institute at its May 2018 Annual Meeting;[48] as of the date of this Order, the official text had not been published. Kansas courts have neither directly addressed the issue of when an insurer may be directly liable for the conduct of defense counsel retained for the insured, nor relied upon or adopted the new Restatement's rule. And the notes to the Restatement acknowledge that "there is a dearth of reported cases holding liability insurers directly liable for negligent selection [of defense counsel]."[49] Accordingly, this Court is not inclined to use a nonbinding Restatement as a means to overturn or expand Kansas law.

Second, even if the Court were persuaded to follow the Restatement, Progressive would only be liable for acts or omissions of McMaster "within the scope of the risk that made his selection unreasonable."[50] Gant argues that the evidence shows the Birk Defendants made the

---

[48] https://www.ali.org/projects/show/liability-insurance (last visited Sept. 17, 2018).

[49] RESTATEMENT OF THE LAW OF LIABILITY INSURANCE § 12, Reporter's Note (b) (2018).

The Honorable Antonin G. Scalia criticized modern Restatements for losing site of their purported mission of summarizing existing law:

> [M]odern Restatements . . . are of questionable value, and must be used with caution. The object of the original Restatements was "to present an orderly statement of the general common law." Restatement of Conflict of Laws, Introduction, p. viii (1934). Over time, the Restatements' authors have abandoned the mission of describing the law, and have chosen instead to set forth their aspirations for what the law ought to be. Keyes, *The Restatement (Second): Its Misleading Quality and a Proposal for Its Amelioration*, 13 Pepp. L. Rev. 23, 24–25 (1985). Section 39 of the THIRD RESTATEMENT OF RESTITUTION AND UNJUST ENRICHMENT is illustrative; as Justice THOMAS notes, *post*, at 1068 (opinion concurring in part and dissenting in part), it constitutes a "'novel extension'" of the law that finds little if any support in case law. Restatement sections such as that should be given no weight whatever as to the current state of the law, and no more weight regarding what the law ought to be than the recommendations of any respected lawyer or scholar. And it cannot be safely assumed, without further inquiry, that a Restatement provision describes rather than revises current law.

*Kansas v. Nebraska*, 135 S. Ct. 1042, 1064 (2015) (Scalia, J., concurring in part and dissenting in part).

[50] RESTATEMENT OF THE LAW OF LIABILITY INSURANCE § 12(1) (2018).

Bitco Policy available to McMaster and that he reviewed the policy, at least in part.[51]  McMaster concluded that the Bitco Policy did not provide coverage for any claims arising from the Fatality Collision; and as a result, Gant argues, McMaster did not put Bitco on notice of the claims arising from the Fatality Collision.[52]  Gant argues that a reasonable jury could conclude that another lawyer would have placed Bitco on notice of the claims arising from the Fatality Collision, as Mr. Pigg did after reviewing the Bitco Policy in February 2015.  Gant further argues that a reasonable jury would also conclude that the case would have settled earlier for $1.25 million, had the Bitco Policy been disclosed.  Gant's argument, however, ultimately asserts that McMaster misinterpreted the Bitco Policy, not that he obstructed settlement—in other words, legal malpractice.  As such, any deficiency in McMaster's past performance with respect to his settlement skill set or lack thereof is beyond the scope of risk that made the selection of counsel unreasonable.

Accordingly, the Court grants summary judgment on Gant's failure to hire competent defense counsel claim.[53]

### B.    Failure to Communicate

"In the context of pretrial settlement negotiations, good faith first requires the insurer to communicate to the insured the results of any investigation indicating liability in excess of policy limits and any offers of settlement which have been made, so that he may take proper steps to

---

[51]Doc. 281, Ex. 8 at 121:5–19.

[52]*Id.* at 125:8–12; Ex. 42.

[53]It appears that Gant has waived any negligent hiring or supervision claim; as discussed in the Court's previous Order, such a claim sounds in tort and is not assignable under Kansas law.  Doc. 294 at 60; *see Bolz v. State Farm Mut. Auto Ins. Co.*, 52 P.3d 898, 901 (Kan. 2002) (collecting cases).

protect his own interests."[54] Gant claims that Progressive failed to communicate its liability determination to the Birk Defendants and the risk of excess exposure to Birk Oil and Linda Birk, in violation of its good faith duty to communicate with its insureds. Gant again attempts to recast his failure to settle theory with Progressive's duty to defend.

It is uncontroverted that Progressive conducted a factual investigation into the accident and concluded that coverage existed under the Progressive Policy. Progressive concluded, based on the police report as well as the finding of an accident reconstructionist retained by Progressive, that the accident occurred on Ms. Gant's side of the road. On June 20, 2011, ten days after the Fatality Collision, adjuster Robert Hansel sent letters to both Edward and Justin Birk, which state in pertinent part:

> At this time it appears that the damages may be in excess of your coverage limits. . . Since you are responsible for all damages that may be awarded against you, you may decide to retain an attorney for your personal interests.
>
> Please let us know immediately if you have any insurance policies that may provide coverage to you in excess of this policy. If we do not hear from you concerning such policies, we will assume that no such policies exist.[55]

It is uncontroverted that neither Justin nor Edward Birk directly responded to Progressive's letters. Although no such letters were sent to Linda Birk or Birk Oil, Edward Birk is Linda Birk's husband and both a principal and owner of the closely-held family business known as Birk Oil.[56] On or about June 23, 2011, Progressive retained McMaster to represent Justin Birk; that representation ultimately expanded to include Edward and Linda Birk and Birk Oil. As

---

[54]*Covill v. Phillips*, 452 F. Supp. 224, 225 (D. Kan. 1978) (citing *Bollinger v. Nuss*, 449 P.2d 502, 514 (Kan. 1969)); *Blann v. Rogers*, 22 F. Supp. 3d 1169, 1179 (D. Kan. 2014) (same).

[55]Doc. 267, Exs. H, I.

[56]Doc. 294 at 4.

noted, where there is a potential excess exposure to an insured, Progressive had a duty to provide independent counsel.[57]  Thus, Gant's claim that Progressive failed to communicate its liability determination to the Birk Defendants is unavailing.

Moreover, nearly two years later, after settlement negotiations were unsuccessful, Gant filed the Birk Lawsuit alleging the Fatality Collision was caused by Justin Birk, alleging a negligent entrustment claim against Edward and Linda Birk, and a claim against Birk Oil on the theory that the accident may be imputed to the company.[58]  Shortly thereafter, McMaster sent a letter to Hansel, copying the Birks and their personal attorney, which stated:

> With the assistance of our clients' personal counsel, we have reviewed the insurance coverage available to the Defendants at the time of the accident. It appears that the Progressive policy provides the only coverage for this accident. Therefore, the Defendants understand that the likely exposure of this case is in excess of the applicable coverage.[59]

Even assuming Progressive breached its duty to communicate these concepts to the Birk Defendants, Gant fails to provide evidence linking the excess policy judgment against the Birk Defendants to that breach.  Gant argues that this failure to communicate had real consequences: if Progressive had explained the risk of personal exposure to all Birk Defendants, it likely would have "sparked a conversation about additional insurance."[60]  Taking this a step further, Gant claims that if Hansel had sent Laura Birk the same letter it sent to Edward and Justin Birk, she would have sent Progressive a copy of the Bitco Policy, which would have led to an early

---

[57]*Patrons Mut. Ins. Ass'n v. Harmon*, 732 P.2d 741, 745 (Kan. 1987).

[58]Doc. 6, Ex. E.

[59]Doc. 267, Ex. Y.

[60]Doc. 295 at 7.

settlement for $1.25 million.[61]  This argument is belied by the record:  Edward and Justin Birk

failed to respond to Progressive's specific inquiry about other insurance; Hansel understood that

McMaster was placing all carriers on notice; a conversation about other insurance took place

between the Birk Defendants and their retained and personal counsel, after which McMaster

wrote to Progressive and stated there was no other available coverage; the Birks believed, in

conjunction with advice from McMaster, that the Bitco Policy did not provide coverage for the

accident; and Justin Birk's criminal attorney advised the Birks to place all of the insurance

carriers on notice of the accident.[62]  Indeed, McMaster did not disclose the Bitco Policy to Gant

until February 2014, and did not forward it to Progressive until February 2015.[63]  Gant's

unsupported assertion that Progressive could have somehow changed the Birk Defendants'

minds is pure speculation and thus insufficient to survive summary judgment.[64]

### C.        Failure to Investigate/Discover Bitco Policy

Finally, citing Fed. R. Civ. P. 54(b), Gant requests that the Court reconsider its prior

ruling rejecting his claim that Progressive breached its duty to negotiate a settlement upon the

theory that Progressive had a duty to discover and disclose additional insurance coverage.[65]  The

Tenth Circuit suggests that when considering a Rule 54(b) motion for reconsideration, a "court

may look to the standard used to review a motion made pursuant to Federal Rule of Civil

---

[61]Laura Birk is the wife of the Birks' son Brian and is involved in the family business.  She
is not an insured or a party in the Birk Lawsuit.  Doc. 294 at 4.

[62]Doc. 294 at 10–13.

[63]*Id.* at 12–13.

[64]This argument would also require reconsideration of the Court's previous order on Gant's
failure to settle claim, which the Court declines to consider in the limited context of the issue before
it.  *See infra* at Section II.C.

[65]*Id.* at 61–64.  Rule 54(b) permits an order or decision adjudicating fewer than all the
claims to be revised at any time before entry of judgment.

Procedure 59(e)."[66]  Further, D. Kan. Local Rule 7.3 requires motions seeking reconsideration of dispositive orders or judgments to be brought pursuant to Rule 59(e) or 60.[67]  Gant's request is beyond the scope of the Court's order directing supplemental briefing under Rule 56(f)(2) on the narrow issue of why summary judgment should not be granted with respect to Gant's direct breach of duty to defend claim.  Given the posture of the proceedings, the Court declines to perform this analysis without the benefit of a motion and briefing by the parties setting forth the applicable standards under the Rules.  Gant's request for reconsideration is denied without prejudice.

**IT IS THEREFORE ORDERED BY THE COURT** that pursuant to Fed. R. Civ. P. 56(f)(2), summary judgment is **granted** to Plaintiff/Counterclaim Defendant Progressive on its claim for Declaratory Relief and Gant's Amended Counterclaim with respect to Gant's direct failure to defend claim; Gant's request for reconsideration of the Court's ruling on his failure to settle claim is denied without prejudice.

**IT IS FURTHER ORDERED** that the parties' respective motions to strike or exclude expert witnesses (Docs. 264, 268, 270) are **moot.**

**IT IS SO ORDERED.**

Dated: <u>September 24, 2018</u>

           S/ Julie A. Robinson
          JULIE A. ROBINSON
          CHIEF UNITED STATES DISTRICT JUDGE

---

[66]*Ankeney v. Zavaras*, 524 F. App'x 454, 458 (10th Cir. 2013).

[67]D. Kan. Local Rule 7.3(a).  *See Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (holding grounds warranting a motion to alter or amend the judgment pursuant to Rule 59(e) "include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice.").  Rule 60(b) allows a party to seek relief from a final judgment under a limited set of circumstances, including fraud, mistake, and newly discovered evidence.  Fed. R. Civ. P. 60(b)(1)–(6).